## STATE v. SHOEMAKER.

1. **Bastardy**: ADOPTION OF CHILD BY ANOTHER MARRYING THE MOTHER. One who marries a woman known by him to be *enceinte* is regarded by the law as adopting the child into his family at its birth, and he becomes liable for its support as a parent, and an action against the natural father for its support as a bastard will not lie. But this rule of adoption does not apply in cases involving questions of heirship and inheritance.

*Appeal from Wapello District Court.*

MONDAY, DECEMBER 10.

THIS is a proceeding under chapter 56, Title 25, of the Code, to charge defendant with the support of a bastard child. The case was tried to a jury and, upon the evidence introduced by plaintiff, the court directed the jury to find for defendant, which was done.    Plaintiff appeals.

*H. B. Hendershott, Samuel Jones* and *Smith McPherson, Attorney-general,* for the State.

*Stiles & Beaman,* for appellee.

BECK, J.—I. The undisputed testimony as disclosed by the evidence for the state established the following facts:

1. The child was begotten by the defendant, and was born on the 13th day of August, 1882.    2. Prior to its birth, on the 1st day of June, 1882, the mother, the prosecutrix, married another man named Getz.    3. At and before the marriage, Getz was informed by the prosecutrix that she was *enceinte;* her condition was apparent from her appearance. Upon these facts, the district court held that plaintiff could not recover, and directed the jury to return a verdict for defendant.

II. Under chapter 56, Title 25 of the Code, a father may be charged with the maintenance of his illegitimate child. The proceeding thereunder is entitled as an action in the

name of the state against the alleged father, and may be prosecuted upon the complaint of the mother.    It is a civil action of a summary nature, (*Holmes v. The State*, 2 G. Greene, 501; *Black Hawk County v. Cotter*, 32 Iowa, 125,) and is intended to secure the maintenance of the bastard, to the end that in no event shall the public become chargable therewith. Of course, if one stands in the relation to the child which will cause the law to esteem him liable as its father for its support, being in *loco parentis*, the proceeding cannot be prosecuted against another who is in fact the natural father.  The one whose relations are such that he stands in *loco parentis* the law esteems the father, and will not, for various reasons, enquire by whom the child was begotten.   One who marries a woman known by him to be *enceinte* is regarded by the law as adopting into his family the child at its birth.   He could not expect that the mother upon its birth would discard the child and refuse to give it nurture and maintenance. The law would forbid a thing so unnatural.   The child, receiving its support from the mother, must of necessity become one of her family, which is equally the family of the husband.    The child, then, is received into the family of the husband, who stands as to it in *loco parentis*.    This being the law, it enters into the marriage contract between the mother and the husband.    When this relation is established, the law raises a conclusive presumption that the husband is the father of his wife's illegitimate child.    We must not be understood to hold that this rule prevails in cases involving questions of heirship and inheritance.    In these cases the rights of others besides the husband and bastard arise. In this case, the rights and liabilities of the husband and child are alone involved; they rest upon the relations which impose upon the husband the duty of maintaining the child.    Our conclusion is supported by public policy, and considerations which work for the peace and well being of families.    A husband who, in the manner we have indicated, has put himself in *loco parentis* of a bastard child of his wife, ought not to be permitted to

disturb the family relation, and bring scandal upon his wife and her child, by establishing its bastardy, after he has condoned the the wife's offense by taking her in marriage.

III. The conclusion we reach in this case is supported by *The State v. Romaine*, 58 Iowa, 46, and cases therein cited.

IV. Many of the cases cited by defendant's counsel, (*Wright v. Hicks*, 15 Ga., 160; *Cross v. Cross*, 3 Paige Ch., 139; *Goodright v. Saul*, 4 Tenn., 356; *Lomex v. Holmden*, 2 Strange, 940; *Hull v. Commonwealth*, Hardin, (Ky.,) 486; *State v. Pettaway*, 3 Hawks, 623; *Commonwealth v. Wentz*, 1 Ashm., 269; *The King v. Inhabitants of Kea*, East, 132; *The King v. Inhabitants of Maidstone*, 12 East, 550; *Shelly v. ——— 13 Ves., 56; *State v. Broadway*, 69 N. C., 411; *Stegall v. Stegall's Adm'r*, 2 Brock., C. C., 256,) involve questions of heirship or inheritance, and; in this respect, differ from the case before us. The distinctions between those cases and this, based upon this ground, are obvious. We have above pointed them out. Other cases cited by counsel are also distinguished by these facts from this case. It is our conclusion that the judgment of the district court ought to be

AFFIRMED.