[File No. 7110]

JULIA SMITH, Appellant v. THEODORE KNUTSON and
ARTHUR KNUTSON, individually, and as co-partners, do-
ing business as Knutson Potato Company, Knutson Farms
Company, Knutson Grain Company, and Knutson Coopera-
tive Association, a corporation, Respondents.

(36 NW2d 323)

Opinion filed·February 22, 1949.

*Day, Lindberg & Stokes,* for appellant.

*Philip R. Bangs,* for respondents.

GRIMSON, District J. The plaintiff brought this action to recover damages on account of the death of her son, Lloyd Smith, who was alleged to have been electrocuted in the potato warehouse of the defendants because of the negligence of the defendants. The defendants entered a general denial and claimed contributory negligence on the part of said Lloyd Smith. They also claimed that he was a trespasser and not then engaged in the performance of his duties nor acting within the scope of his employment. The trial was had to a jury. At the close of the case a motion made by the defendants for a directed verdict was denied. The jury returned a verdict for the plaintiff. Thereafter the de-

fendants made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The district court granted the motion for judgment notwithstanding the verdict and ordered judgment for the defendants for the dismissal of the action. From that judgment this appeal is taken.

Section 281–509, 1947 Supplement ND Rev Code 1943, provides that motions for directed verdict when objected to shall be denied and that "the Court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, . . . but upon subsequent motion, by such moving party after verdict rendered in such action, that judgment be entered notwithstanding the verdict, . . . the Court shall grant the same if, upon the evidence as it stood at the time such motion to direct a verdict was made, the moving party was entitled to such directed verdict." In Ennis v. Retail Merchants Asso. Mutual Fire Ins. Co. 33 ND 20, 36, 156 NW 234, it is held that in addition to making the motion for a directed verdict, it is an essential prerequisite for a judgment notwithstanding the verdict under this section that "the party who moved for a directed verdict must have been entitled to a directed verdict at the time of the motion. The motion for judgment notwithstanding the verdict in effect, reviews only the court's ruling in denying the motion for a directed verdict. . . . If the motion for a directed verdict was properly denied, then a motion for judgment notwithstanding the verdict should not be granted. See Johns v. Ruff; 12 ND 74, 95 NW 440; West v. Northern P. R. Co. 13 ND 221, 231, 100 NW 254."

Upon an appeal from a judgment notwithstanding the verdict, therefore, the only question for consideration in the appellate court is whether the motion for a directed verdict should have been granted by the district court on the grounds then laid. Such a question must be determined upon the whole record as it stood at that time. Only if the defendants then were entitled as a matter of law on the record to a judgment should the motion for judgment notwithstanding the verdict be granted. First State Bank of Eckman v. Kelly, 30 ND 84, 152 NW 125, Ann Cas 1917D 1044; Weber v. United Hardware & Implement Mutuals Co. 75 ND 581, 31 NW2d 456 and cases cited.

At the close of the plaintiff's case the defendants moved for a directed verdict in favor of all of the defendants and each one separately on the grounds that the plaintiff had failed to make out a prima facie case; that no negligence was shown on the part of the defendants, that the deceased was a trespasser at the time and place of the accident, and that there was no evidence from which the jury could grant the plaintiff any relief.

At the close of the entire case this motion was renewed and, on objection, denied. In the motion for judgment notwithstanding, reference is made to these motions and as specifications of error on the ruling it is claimed:

"(a) There is no evidence of negligence on the part of the Defendants, or any of them.

(b) The undisputed evidence, as a matter of law, establishes that Lloyd Smith was negligent, and that his negligence was a proximate cause of the accident and his death.

(c) The undisputed evidence establishes that at the time of the accident Lloyd Smith was a trespasser on the premises where the accident occurred.

(d) The undisputed evidence establishes that Lloyd Smith, at the time of the accident, was not an employee of the Defendants, or any of them.

(e) The undisputed evidence establishes that at the time of the accident, the said Lloyd Smith was not acting in the course of his employment."

It appears from the evidence that the plaintiff is a widow; that the deceased, Lloyd, was her son, a single man, 44 years of age living with her, helping her in her work about the house and assisting in her support. The defendants were operating various enterprises around Thompson, North Dakota, including the farming of some 2200 acres, raising potatoes, operating a potato warehouse, grain elevator and a service and repair station. In all these enterprises Theodore and Arthur Knutson were co-partners, except that for building the warehouse they had incorporated the Knutson Cooperative Association in which they held practically all the stock and for which the co-partnership operated the warehouse after it was completed. In their operations the defendants employed sometimes as many as one

hundred men. One of these employees was Lloyd Smith. For two years prior to July 4, 1944, he had been employed by the defendants in various activities but chiefly as a mechanic repairing machinery at which he was very capable. Theodore Knutson on a pre-trial examination admitted Smith was employed on July 4, 1944 for driving and repairing tractors. He had not worked steadily but he worked for no one else during that time. He was paid by the hour. Defendants paid their help twice a month on the 5th and the 20th of the month.

There is testimony that Lloyd had been injured as a youth and frequently suffered backaches therefrom, also that he was addicted to the use of intoxicating liquors. Defendants' foreman would often call for him and take him to his work unless he was not in condition because of backache or liquor. Other times he would go to the repair shop himself. There is evidence that he worked some in the potato warehouse during winter or early spring of 1944, that he worked quite steadily through May and June, that the last work done by Lloyd prior to July 4th, 1944 was on June 30, 1944, when he was riding the potato planter. The payment for that, however, was not made until July 28. On July 4, none of the defendants or their employees were in Thompson where the potato warehouse is located except Lloyd. He was working at home all that day and there is some evidence that he may have been drinking. That evening he had made a telephone call to Theodore Knutson. About 7:30 that evening he left his mother's house saying that he was going to start the pump in the warehouse. There is evidence that he had been asked to do that on a prior occasion. He was given a ride on the running board of a car to the crossing next south of the warehouse by a passerby who claimed he then smelled liquor on Lloyd's breath. The next morning Lloyd Smith was found dead on a low table or bench in the basement of the warehouse beside an electric motor and a pump that had been placed thereon with an electric wire in his right hand, the palm of which was found to be severely burned.

The evidence shows that all that spring there had been more or less water seeping into this basement which had at times been pumped out by the use of this motor and pump. The basement

contained a lot of potatoes which had been turned over to the government by the defendants on a loan. Those potatoes were spoiled and a dump order had been received which was in the process of being carried out at the time of the accident. There is some dispute in the evidence as to the amount of water in the basement on the morning of July 5 when the body was found. All of the witnesses admit the floor was damp and that they walked on planks to get to the table. Some claimed the water was as much as sixteen inches deep. It is undisputed that Lloyd Smith's trousers were wet half way up to the knees. The original wiring for the motor had been put in by an electrician but on a change of motors the foreman, not an electrician, did the wiring for that himself. He replaced a three-phase motor with a single-phase motor using two electric wires instead of three. He did not take out nor disconnect the third wire and did not know whether it ever was removed or just left hanging but testified it was not connected with the single-phase motor. A master switch was on the wall of the first story near the door. From that, wires led to another switch on the basement wall beside the stairway leading to the basement which would shut off the motor. There were no fuses for that switch. Instead the terminals in the fuse box were directly connected with the wires so that this fuse box would operate without fuses which would permit a larger flow of electricity than would a fuse. These wires went down the basement wall and under and up through the table on which the motor had been placed. At the point of connection these wires were twisted without being soldered. On the morning of July 5, after the body was taken away it was found that the connection was not taped and that there were three places near the motor where the wires were bare and exposed.

On the evening of July 3 the foreman had shut off the master switch and checked the warehouse. When he returned on the early morning of July 5 the lights were on and the motor and pump running beside the body of the dead man.

An expert testified that the cause of death was an electric current entering the palm of the right hand passing through the body to the ankles. The coroner gave a certificate of death to that effect.

The defendants testified that Lloyd was not working for them on July 4, that no authority to enter the warehouse or to start the motor had been given to him, that he was a mere trespasser on the premises and that whatever he did was outside the scope of any employment he had had.

Certain rules have been laid down by this court in determining when a party is entitled to a directed verdict. In Cameron v. Great Northern R. Co. 8 ND 124, 77 NW 1016, this court said: "The test is whether there is any competent evidence in the case reasonably tending to sustain the cause of action alleged; and, if the evidence is such that intelligent men may fairly differ in their conclusions thereon upon any of the essential facts of the case, it is error to withdraw the evidence from the consideration of the jury." In Black v. Walker, 7 ND 414, 416, 75 NW 787, it is said: "The most direct and positive testimony may be completely demolished by circumstantial evidence, or overcome in the minds of a jury or the mind or a court by the establishment of other facts inconsistent therewith." In Paulson v. Modern Woodmen of America, 21 ND 235, 243, 130 NW 231, this Court said: "Ordinarily the question of what inferences are deducible from the evidence is peculiarly a question for the jury, and it is only in rare instances that the court is justified in determining such question as a matter of law. If it can be said that reasonable men may fairly differ as to the inferences to be deduced from all the circumstances disclosed, it is a proper case for the jury."

In Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 ND 217, 112 NW 972, the court said: "Contributory negligence, as well as negligence of the defendant, are questions for the jury in a case at law, unless the conceded facts from which the inference must be drawn admit of only one conclusion. If the facts . . . are such that different, impartial minds might fairly draw different conclusions from them, they should be submitted to the jury, and are only for the court when such that fair-minded men might draw only one conclusion from them."

In Taylor v. Minneapolis, St. P. & S. Ste. M. R. Co. 63 ND 332, 248 NW 268, the rule is laid down that: "In determining this issue the court must adopt that view of the evidence which is most

favorable to the opposing party." In Leonard v. North Dakota Co-op. Wool Marketing Asso. 72 ND 310, 6 NW2d 576, the court says: "The jury having returned a verdict for the plaintiff is presumed to have determined all questions of fact within the jury's province in favor of the plaintiff."

Considering the evidence in the light of these rules, can this court say as a matter of law that the defendant was entitled to a directed verdict? May not reasonable men differ on the conclusion to be drawn from the facts shown in evidence? Do the circumstances not dispute the evidence of the defendants?

With regard to the first specification (a), that "there is no evidence of negligence on the part of the defendants or any of them" the evidence does show that, while a third party was removing the potatoes, the defendants had the supervision and control of the warehouse on July 4, 1944, that the wiring in the warehouse had originally been put in by an electrician; that such wires led down into the basement where a table had been put over a sump with a motor and a pump on it, for the purpose of pumping out any water in the basement; that there had been a change of motors and the wiring for that change had been put in by the Knutson foreman who was not an electrician; that that change was from a three-phase motor using three wires to a one-phase motor using two wires. What became of the third wire is not shown; that on the morning after the fatal accident the deceased was found on the table with one of those wires in the palm of his right hand; that the connection at the motor was not taped, that several bare spots were found on those wires near the motor. There is further evidence from which negligence might be inferred. It cannot be said that a legitimate inference of negligence by the defendants could not be drawn by reasonable men from those circumstances.

Considering next specification (d) that the deceased was not in the employ of the defendants, the evidence shows that Lloyd Smith had been working for the defendants for two years, not steadily but whenever he was in condition to work. He worked by the hour. He was paid on the 5th and 20th of the month; he worked for no one else; his last work prior to July 4 was on June 30. He was not paid off then, there is no evidence that

he was discharged. Theodore Knutson on pretrial admitted his employment on July 4, for riding and repairing tractors. Against these circumstances is the assertion by the defendants on the trial that Smith was not employed for any purpose on July 4 at the time of the accident.

The duration of an employment depends on the intention of the parties. In case of uncertainty this intent may be sought in the circumstances surrounding the transaction, the situation and object of the parties, the nature of the employment, and any fact in the evidence bearing on the matter of intent including the practical construction placed on the agreement by the parties. 56 CJS 74, et seq. Even if the hiring is by the hour the circumstances will control as to the intent of the parties regarding the duration of the hiring. 11 ALR 479. "A hiring at so much per week, or month, raises no presumption that the hiring is for such period, and where no definite period is expressed in the contract of employment, in the absence of facts and circumstances showing a different intention, the law presumes a hiring at will." 100 ALR 839. The American rule is that a hiring indefinite as to time is a hiring at will. 11 ALR 470; 100 ALR 835. Putnam v. Producers' Live Stock Marketing Asso. 256 Ky 196, 75 SW2d 1075, 100 ALR 828, 831; 35 Am Jur 456.

Clearly the matter of whether or not Smith was employed by the defendants at the time of the fatal accident was a question for the jury.

We will next consider specifications (c) and (e) which are to the effect that at the time of the accident Lloyd Smith was not acting in the course of his employment and was a trespasser. Smith's occupation was varied. His main work seems to have been repairing machinery. He did most of that at the defendants'. service station across the road from the warehouse. He did other work, however. He admittedly worked in the potato warehouse during the winter or early spring. He rode the potato planter during planting season and as late as June 30. His mother testified that a short time—in May or June—before the accident, Theodore Knutson came to her house and asked her to be sure and tell Lloyd to start the pump because the water was coming in. Rotten potatoes were being moved out of the base-

ment on the day before the fatal accident which job was to be continued on the 5th of July. If there was water in the basement then it would seem logical to have it pumped out before the resumption of that work. Lloyd Smith was the only employee of the defendants in Thompson on the 4th of July. Theodore Knutson admitted a telephone call from Smith on the evening of July 4, but did not disclose what that call was about. When Smith left home that evening he told his mother he was going to start the pump. It would seem that there can be sufficient logical inferences drawn from the testimony by reasonable men not only that Lloyd Smith was acting in the course of his employment but that he was not a trespasser on the defendants' property. That was a question for the jury.

Coming now to specification of error (b) claiming contributory negligence on the part of Lloyd Smith the only evidence from which it may be said that an inference of negligence might be drawn is that regarding his drinking on July 4. The only sign of that when he went to the warehouse was that liquor was smelled on his breath. Against that it appears he was a capable mechanic and acquainted with the layout of the basement. Then there is the natural instinct of self-preservation from which the presumption that Smith was exercising due care makes a prima facie case to that effect. In Cameron v. Great Northern R. Co. 8 ND 124, 133, 77 NW 1016, this court said:

"The law, out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by a railroad accident was at the time of the accident in the exercise of due care; and this presumption is not overthrown by the mere fact of the injury. Flynn v. Railroad Co. 78 Mo 195. See, also, Adams v. Iron Cliffs Co. (Mich) 44 NW Rep 270. In the absence, therefore, of an eyewitness to the accident, it is the duty of the Court to assume, unless it is shown to the contrary, that at the time of the accident the party injured was in the exercise of due care. Plaintiff being entitled, under the authorities, to invoke in her aid the legal presumption of due care on the part of the deceased, the defendant, therefore, has the burden to overthrow such presumption by evidence sufficient to do so. This burden

is not sustained by the production of evidence which leaves the question of contributory negligence in doubt. If, under the evidence, reasonable men may honestly differ, the ultimate question is one of fact for the jury."

See also, Kunkel v. Minneapolis, St. Paul & S. Ste. M. R. Co. 18 ND 367, 121 NW 830. The question of contributory negligence in the case at bar was properly left to the jury.

Considering the record as a whole this court has come to the conclusion that the defendants were not entitled to a directed verdict when the motion was made at the close of the evidence. It follows that granting a judgment notwithstanding the verdict was error and must be reversed.

The defendants' motion was in the alternative for judgment notwithstanding the verdict or for a new trial. When the trial court ordered judgment notwithstanding the verdict that obviated the necessity at that time of determining the alternative motion for new trial. That, therefore, remains yet undetermined and may still be urged by the defendants. See Nelson v. Grondahl, 13 ND 363, 368, 100 NW 1093; La Bree v. Dakota Tractor & Equipment Co. 69 ND 561, 288 NW 476. Leave is granted the defendants to renew their application for a new trial in the district court within thirty days from the date of filing remittitur herein. If such motion is not made, judgment is directed to be entered in favor of the plaintiff pursuant to the verdict. Grewer v. Schafer, 50 ND 642, 197 NW 596.

Reversed and remanded.

NUESSLE, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.

BURR, J., did not participate.