Ardis KUCERA, Plaintiff and Respondent,

v.

Henry KUCERA, Defendant and Appellant.

No. 7905.

Supreme Court of North Dakota.

Oct. 26, 1962.

Rehearing Denied Nov. 27, 1962.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for plaintiff and respondent.

Duffy & Haugland, Devils Lake, and Jacque G. Stockman, Fargo, for defendant and appellant.

STRUTZ, Judge (on reassignment).

The plaintiff brought this action for divorce, alleging extreme mental cruelty. The defendant in his answer denies the material allegations of the plaintiff's complaint and counterclaims on grounds of adultery and extreme cruelty.

The record discloses that the parties were married on September 17, 1955. At the time of the marriage, the plaintiff was pregnant by another man, a certain Mr. K———, and the child who was born to her, less than seven months after the marriage, admittedly is not the child of the defendant. The plaintiff herself, testifying in this case, stated that she had had no sexual relations with the defendant prior to their marriage. She contends, however, that this child, having been born into the family of the defendant after their marriage and the defendant having married the plaintiff with full knowledge of her pregnant condition, should be held to have been adopted at its birth by the defendant and that the defendant is liable for its support as one standing *in loco parentis*.

The record further discloses that the parties themselves were extremely doubtful whether the marriage would be a successful one, even before it was consummated. The plaintiff testified that they had agreed, before marriage, that "if the marriage didn't work out we could get a divorce in a year, but it would give the child a name."

After the birth of this child, a second child was born and, for a period of more than two years before the commencement

of this action, the parties ceased to have any marital relations. The defendant testified positively that:

"We have had no sexual relations since Robin was born."

The plaintiff does not deny this. There is evidence in the record that the defendant did call the plaintiff names and that, on at least one occasion, he struck her. He also called the first child, who admittedly is not his child, some obscene names.

The differences of the parties finally were brought to a head when the defendant, returning home unexpectedly one evening from the college where he was working on a thesis, discovered Mr. K———, the man who had fathered the plaintiff's first child, in the home with the plaintiff. The plaintiff thereupon admitted that Mr. K——— had been calling on her for a period of more than six months, as often as once a week. This was in the month of March 1959. The parties continued to live under the same roof until the end of the school year in June, when this action was commenced by the plaintiff.

On this record the trial court granted to the plaintiff a decree of divorce, and ordered the defendant to make monthly payments for the support of the plaintiff and for the support of the two children born during the marriage. From this judgment the defendant has appealed, demanding a trial de novo.

Several questions are presented on this appeal:

1. Whether, under the facts disclosed by the record, the plaintiff is entitled to a decree of divorce;

2. Whether the defendant is liable for the support of the child born to the plaintiff after the marriage of the parties, but which child admittedly is not the child of the defendant; and

. 3. Whether the plaintiff or the defendant is entitled to custody of the one child born as the issue of the marriage.

The plaintiff's cause of action is based on an allegation of extreme cruelty. "Extreme cruelty" is the infliction by one party to a marriage of grievous bodily injury or grievous mental suffering upon the other. Sec. 14–05–05, N.D.C.C.

█ A divorce may be granted in North Dakota on grounds of grievous mental suffering, even though such suffering produces no bodily injury. De Roche v. De Roche, 12 N.D. 17, 94 N.W. 767; Rindlaub v. Rindlaub, 19 N.D. 352, 125 N.W. 479; Raszler v. Raszler (N.D.), 64 N.W.2d 358.

Does the record disclose conduct on the part of the defendant which would tend to so wound the feelings of the plaintiff that her health was impaired, and were the actions of the defendant such as to destroy the ends of the marriage? We have examined the entire record carefully. The plaintiff did testify to some instances in which the defendant's language and custom was such that she alleges it caused her extreme mental anguish. While the evidence supporting the plaintiff's cause of action is not very strong, the trial court did find that such evidence was sufficient to entitle her to a divorce.

The defendant, however, has counterclaimed for a divorce on grounds of extreme cruelty and on grounds of adultery. On reading the entire record, we believe that the plaintiff also was guilty of conduct which, standing alone, would entitle the defendant to a decree of divorce. For a period of more than six months, the plaintiff was allowing Mr. K———, the man who was the father of her first child, to call on her at the home of the parties. True, the plaintiff contends that he called against her wishes, but the plaintiff does admit that these calls were continued, more or less regularly, for a period of more than six months. The plaintiff must have given some cooperation to Mr. K———, at least to the extent of informing him as to what hours the defendant would be absent from the home.

The plaintiff has denied positively any acts of adultery during the six months of such visits. It is difficult to believe that the man who was the father of her child continued to call on her for more than six months without resuming such relationship as they had had prior to the marriage of the plaintiff and the defendant. While the court, ordinarily, will not require direct evidence on a charge of adultery, the trial court did believe the statements of the plaintiff when she testified that she had had no relations with Mr. K——— during these visits. While the evidence is such that it is difficult to believe the plaintiff's testimony on this point, we cannot say that the evidence is so strong that the trial court clearly erred in this finding. The circumstances are such that adultery might reasonably have been inferred, for it was only the accidental discovery by the defendant of these visits which brought them to light.

Although the defendant failed to prove his charge of adultery to the satisfaction of the trial court, we do believe that he did prove a cause of action on the ground of extreme cruelty. Here, the defendant had married the plaintiff knowing that she had had previous relations with Mr. K——— and that she was pregnant and with child by Mr. K——— at the time of the marriage of the parties. Thereafter, he discovered that, for more than six months, the plaintiff was visited by the same Mr. K——— in the home of the parties. Certainly that is sufficient evidence to substantiate a charge of extreme cruelty.

But that is not all. The defendant introduced evidence which would have justified a decree of divorce in his favor on grounds of desertion. He testified that "we have had no sexual relations since Robin was born," which was well over two years before the commencement of this action. The plaintiff did not deny this, nor did she try to justify her refusal to have reasonable sexual relations with the defendant, for physical or health reasons. She merely testified, "I couldn't stand to have sexual relations with him," and then admitted that her refusal was not due to physical or health reasons.

The defendant, therefore, introduced evidence which would have justified the court's granting him a divorce on his counterclaim, for the evidence clearly established a cause of action in favor of the defendant on grounds of desertion.

Our statute defines "willful desertion" to include "persistent refusal to have reasonable matrimonial intercourse as husband and wife when health or physical condition does not make such refusal reasonably necessary, * * *". Sec. 14–05–06, Subsec. 1, N.D.C.C.

It is true that the defendant alleged only extreme cruelty and adultery as grounds for divorce in his counterclaim. But, under the Rules of Civil Procedure now in force in North Dakota, when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be tried in all respects as if they had been raised by the pleadings. Necessary amendment of the pleadings to make them conform to the evidence may be made upon motion of either party, even after judgment, and failure to amend does not affect the result of the trial on these issues. Rule 15(b), N.D.Rules of Civ.Proc.

Therefore, since the defendant did prove a cause of action for divorce on grounds of desertion as well as on grounds of extreme cruelty, we have a situation where both parties have established a cause of action for divorce.

Section 14–05–10 of the North Dakota Century Code provides:

"Divorces must be denied upon showing: * * *

"4. Recrimination; * * *."
Section 14–05–15 reads:

"Recrimination is a showing by the defendant of any cause of divorce against the plaintiff in bar of the plaintiff's cause of divorce. * * *"

This court repeatedly has held that the above statutes are an absolute bar to divorce in a case where both the plaintiff and the defendant plead and prove facts constituting statutory grounds for divorce against each other. Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519; Azar v. Azar (N.D.), 112 N.W.2d 1.

This court, in these and other cases, pointed out that, where the Legislature has given the same legal effect to every recognized cause for divorce, it is not for the court to determine the gravity of the different causes which are proved.

■ Thus, where recrimination is proved, as it was in this case, a divorce must be denied to both of the parties. This is true even though we believe the legitimate ends of the marriage have been destroyed and a divorce perhaps would be the better solution for the difficulties facing the parties. The provisions of our statute on recrimination are mandatory, and a divorce "must be denied" upon a showing of recrimination. The court has no discretion in the matter and must follow the mandatory wording of the law.

The judgment of the trial court granting a divorce to the plaintiff must therefore be reversed, and a new judgment shall be entered denying a divorce to either party.

■ The next question to be considered is that of support for the children. There can be no question on the matter of support for the second child, who was born as the child of the parties. A more difficult question presents itself, however, in the matter of liability of the defendant for the support of the child who was born to the plaintiff after the marriage of the parties, but who admittedly is not the child of the defendant. In North Dakota, a child born to a marriage is *presumed* to be the child of the parties to the marriage. Sec. 14–09–01, N.D.C.C. But this is only a rebuttable presumption, and is not conclusive. State v. Coliton, 73 N.D. 582, 17 N.W.2d 546, 156 A.L.R. 1403.

In this case, it is not necessary to rebut this presumption, for the plaintiff herself testified that she and the defendant had had no sexual relations prior to their marriage, and she stated positively that the child was not the child of the defendant but of Mr. K——. The court found that the first child, though admittedly not the child of the defendant, was received into the family of the defendant during the marriage and that the defendant stands *in loco parentis* as to such child. The court relied on the Iowa case of State v. Shoemaker, 62 Iowa 343, 17 N.W. 589, 49 Am.Rep. 146, in which the Iowa court held that, where the husband knew of the wife's pregnancy by another man and married her in spite of that knowledge, such knowledge had the effect of making the presumption of paternity conclusive against the husband; that marrying a woman with knowledge of her pregnancy by another man was consent on the part of the husband to stand *in loco parentis* as to the child born to the woman thereafter. The Iowa case arose when an attempt was made to compel the natural father of the child to contribute to its support. The Iowa court therefore adopted the theory that any man who marries a woman known by him to be pregnant, even though such pregnancy was caused by another, adopts the child at its birth, regardless of whether he is the father or not. There may be some merit to this view, but North Dakota has not recognized this as one of the methods of adoption. We believe that the rule adopted by the State of Oregon in the case of Burke v. Burke, 216 Or. 691, 340 P.2d 948, is the better rule. As was said in the Oregon case,

> "We think that any theory of adoption should be based upon the proposition that the child should be wanted for its own sake, and not upon the theory that it is accepted incidentally as being an attachment of the mother."

To adopt the Iowa rule would make it very difficult, if not impossible, for a woman who is pregnant to induce a man not responsible for her condition to marry her.

In this case, the parties knew that the child who was to be born to the plaintiff was not the child of the defendant. They felt, however, that they would, by their marriage, at least give the child a name. They were not sure that the arrangement would work out, for the plaintiff herself testified that they had agreed, before their marriage, that "if the marriage didn't work out we could get a divorce in a year, but would give the child a name."

■ The child has its name. But under no theory, of adoption or otherwise, in this State can the defendant be held responsible for the child's support under the circumstances in this case.

Since the child is not a child of the marriage, it follows that the trial court could not require the defendant to support such child, and that portion of the trial court's order relating to it also is reversed.

■ The final issue raised on this appeal is whether the plaintiff or the defendant is entitled to the custody of the child born to the parties. The trial court awarded custody to the mother. Our statute specificly provides that, in an action for divorce, the trial court may give such direction for the custody, care, and education of the children as may seem necessary and proper. Sec. 14–05–22, N.D.C.C. The action of the trial court is subject to modification at any time by a proper showing of changed conditions.

■ The determining consideration of the court in giving directions for the custody of the children should be the welfare of the children. King v. King, 61 N.D. 422, 237 N.W. 854; Rufer v. Rufer, 67 N.D. 67, 269 N.W. 741. The child whose custody is here involved was born on March 26, 1957, and was two years old at the time of the trial. We believe, therefore, that the trial court acted within its authority in awarding custody of an infant of such tender years to the plaintiff, the mother of the child.

For reasons stated above, and because there may have been substantial changes in the circumstances of the parties to this action since judgment was entered herein, we believe that the question of allowance for the support of this child should be reviewed by the district court. The case therefore is remanded to the district court with directions to enter judgment denying a divorce and for the purpose of hearing further testimony on the matter of support, in conformity with this opinion. Sec. 14–05–26, N.D.C.C.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.