Clarine BJERKE, Plaintiff and Respondent,

v.

Harry V. HEARTSO and John F. Heartso, as Co-Administrators with the Will Annexed of the Estate of Howard Heartso, Deceased, and Richard Lysne, as Administrator of the Estate of Orvin B. Lysne, also known as Orvin Lysne, Deceased, Defendants and Appellants,

Great Plains Supply Company, a corporation, Defendant.

Civ. No. 8596.

Supreme Court of North Dakota.

Jan. 19, 1971.

Rehearing Denied Feb. 22, 1971.

Foughty, Christianson, Thompson & Rutten, Devils Lake, for plaintiff and respondent.

Duffy & Haugland, Devils Lake, for defendants and appellants Heartso.

Letnes & Marshall, Grand Forks, for defendant and appellant Lysne.

RALPH B. MAXWELL, District Judge.

On a clear, quiet morning in January of 1968, on an open stretch of highway near Devils Lake, two cars met at the center of the road in a violent head-on collision. The lives of all three occupants of the vehicles were lost.

This lawsuit is an outgrowth of that tragic event. The widow of the sole passenger has sued the estates of both drivers to recover for the wrongful death of her husband. She has charged each driver

with negligent conduct. The corporate employer of one of the drivers also has been made a party defendant.

A jury was waived. The trial court dismissed the corporate employer, but found both drivers at fault and awarded judgment against their estates in the sum of $95,959.45, with costs in the amount of $106.80, making a total judgment of $96,066.25. That determination has been brought to this court with a request for a trial de novo.

The record before us shows that the plaintiff's deceased husband, Gordon Bjerke, was an employee of the defendant Great Plains Supply Company at the branch lumber yard in Devils Lake. His home was in Churchs Ferry, some twenty miles west of Devils Lake.

After concluding his usual workday on Friday, January 19, 1968, Bjerke stayed at the shop. He continued to work on his own account, building tables for a personal client. He worked late. At 1 a.m., he quit and went to the Two-Spot Cafe. There he joined a group of fellow employees, including Orvin Lysne, the man fated to drive him to his death later that day. Lysne was the local branch manager of Great Plains. He had spent the entire evening at a local tavern. While there, he had consumed ten to twelve drinks and quite obviously was under their alcoholic influence.

The group of four men spent the rest of the night at the cafe, where they shared the contents of a "fifth" of Rock and Rye liquor. Shortly before 8 a.m., they went to the Great Plains Supply Company. Testimony indicates that Lysne still was somewhat under the influence of alcohol. He and Bjerke remained only briefly at the lumber yard. Taking Lysne's car, they drove to Bjerke's home in Churchs Ferry, where they remained about an hour and a half, visiting with Mrs. Bjerke and consuming copious amounts of coffee. Shortly after 10 a.m., they started back east toward Devils Lake.

Howard Heartso was the driver and sole occupant of the other ill-fated vehicle. He had visited his tax accountant that morning. At about 10:30 a.m., he left and drove west on U. S. Highway No. 2.

At a point 1½ miles west of Devils Lake, the two cars collided. There were no surviving eyewitnesses. Heartso and Bjerke were killed outright. Lysne, grievously injured, was unable to talk before he, too, was claimed by death. We therefore are left with only circumstantial evidence to tell what happened.

Debris and gouges in the blacktop surface put the point of impact near the center of the road. Each vehicle therefore was encroaching somewhat upon the other's lane of travel. That the vehicles met apace, and almost squarely head-on, is attested by the nature and enormity of the damage. Perhaps the most articulate clue at the scene was a tire mark arriving at the point of impact from the direction of travel of the Lysne car. The continuous mark, 198 feet long, originated at the north shoulder of the road, coursed across Heartso's lane of travel toward the center, and terminated abruptly at the scene of impact. In this stark portraiture lies the irresistible connotation that Lysne, driving on the wrong side of the road, attempted to turn suddenly to his own lane and at midpoint was intercepted by the Heartso vehicle.

With points conceded by the parties aside, there are but three basic issues: (1) Was Bjerke acting outside the orbit of his employment at the time he met his death? (2) Does the evidence establish negligence on Heartso's part? (3) Does the evidence show that Lysne was grossly negligent?

■ The trial court answered each of these questions in the affirmative. Upon trial de novo, such findings are not binding on this court. Frederickson v. Hjelle, 149 N.W.2d 733, 744 (N.D.1967). They will, however, be accorded appreciable weight. Matteson v. Polanchek, 164 N.W.2d 54, 55

(N.D.1969) ; Verry v. Murphy, 163 N.W. 2d 721, 727 (N.D.1969).

The plaintiff widow, apparently confident that Bjerke was acting outside the scope of his employment at the time of the accident, elected not to file a claim for Workmen's Compensation benefits. She brought this lawsuit instead. Two of the defendants, Great Plains and the Lysne estate, nevertheless insist that there is a question of Workmen's Compensation coverage. If there was such coverage on the fatal trip, this suit cannot survive against either the defendant employer or the fellow employee, Lysne. Such actions are abolished by the Workmen's Compensation Act.

These two defendants further maintain that the question of coverage is exclusively for the Workmen's Compensation Bureau to resolve. We disagree. A wrongful-death action certainly is cognizable, in the first instance, in the district court, and upon trial de novo, here. Merely because the case incidentally has a Workmen's Compensation question in it does not oust the courts of jurisdiction.

■ We do concede, however, that questions of Workmen's Compensation coverage normally should be resolved by the Workmen's Compensation Bureau. Whenever a lawsuit generates an issue that pertains to an administrative agency's area of primary jurisdiction, it is well for the court to refer that issue to the agency.

"If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue [to the administrative body]." Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

■■ In this case, however, the opportunity for referral to the Bureau no longer exists. The permissible period for filing a claim based on Bjerke's death has long since passed. The Bureau has lost jurisdiction. Schmidt v. N. D. Workmen's Comp. Bureau, 73 N.D. 245, 13 N.W.2d 610, 615 (1944). All reasons that otherwise might impel us to stay our hand have lost their force. We are entirely free to determine Bjerke's Workmen's Compensation status at the time of his death.

■ Workmen's Compensation coverage is dependent upon whether an injury occurs "in the course of employment." The standards for testing whether injury is suffered in the course of employment are these:

" ' * * * Does the injury occur within the period of the employment? Does it occur in a place where the employee may reasonably be? Does it occur while he is reasonably fulfilling the duties of his employment?' All these must concur under the circumstances." Kary v. N. D. Workmen's Comp. Bureau, 67 N.D. 334, 272 N.W. 340, 342 (1937).

The trial court concluded, in effect, that the rigor of these criteria eliminated the question of Workmen's Compensation from the case. It found that Bjerke's midmorning trip to his home in Churchs Ferry was not related or incident to his employment. Upon full examination of the evidence, and giving appreciable weight to that finding, we concur.

■ So far as the record informs us, no company business was transacted or discussed on the trip. There was no visible connection with employment. It could not reasonably qualify as a lunch or "coffee break"; it was simply too far to travel and too extended in time for that. Moreover, it appears from the testimony that Bjerke was returning to Devils Lake not to go back to work but to deliver the tables he had made for his private client. We therefore conclude that it was a truant expedition, outside the scope of Bjerke's employment.

The effect of such conclusion is that plaintiff has properly initiated her claim in a judicial forum rather than with the Workmen's Compensation Bureau, and that defendants' motion to dismiss is invalid. We have no impediment to our consideration of the case upon the merits.

The plaintiff's case against Lysne's estate is founded upon gross negligence. Since Bjerke was a guest passenger of Lysne, simple negligence alone is insufficient to support a recovery. Under the so-called guest statute, the burden is upon the plaintiff to establish that "intoxication, willful misconduct, or gross negligence was the proximate cause of such death, injury, or damage." Sec. 39–15–03, N.D.C.C. Only gross negligence has been alleged in the complaint.

The court below found that Lysne was guilty of gross negligence. The learned judge did not dictate into the record his ratio decidendi. Neither did he compose a written memorandum opinion. All we have are findings of fact which, although signed by him, were written with the partisan pen of plaintiff's counsel.

From our independent examination of this record, we are unable to find support for the trial judge's finding. On the contrary, we find the case wanting proof of one of the essential elements of gross negligence. Specifically lacking is evidence of mental attitude, which we heretofore have ruled necessary to establish gross negligence.

"The term gross as applied to the negligence of a motorist in an action brought by an automobile guest has reference to the *mental attitude* of the motorist in regard to the consequences which he should have foreseen and implies such gross recklessness as shows indifference to the consequences." Holcomb v. Striebel, 133 N.W.2d 435, 438 (N.D. 1965). [Emphasis supplied.]

Here, as in the *Holcomb* case, the plaintiff's claim of gross negligence rests solely upon the inferences to be found in circumstantial evidence. The difficulty of proving gross negligence by inference alone is manifest in its definition:

" 'Gross negligence' is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature." Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675, 676 (1936), and cases cited.

We ruled in the *Holcomb* case that circumstantial evidence will not suffice to prove gross negligence except where the circumstances are inconsistent with any other theory. Where the inferences to be found in the circumstantial evidence support a theory of ordinary negligence equally as well as one of gross negligence, then gross negligence fails.

In the instant case, the accident can be explained as well upon several hypotheses of ordinary negligence as upon that of gross negligence. All that the circumstantial evidence tells us is that Lysne strayed to the wrong side of the road. If it was simply because he was momentarily inattentive, it was ordinary, not gross, negligence. Holcomb v. Striebel, *supra*. If it was because he had dozed momentarily, it was ordinary, not gross, negligence. Holcomb v. Striebel, *supra*. Even if it was because he was intoxicated, it does not follow that it was gross negligence. It could as well have been ordinary negligence superinduced by intoxication. Borstad v. LaRoque, 98 N.W.2d 16, 23 (N.D.1959). It was gross negligence only if Lysne's mental attitude was such that he intentionally or wantonly acted in disregard of the safety of himself and others, and there is nothing in the record to establish that this was so. The plaintiff therefore has failed

her burden of proving that Lysne was grossly negligent and that such gross negligence was a proximate cause of her husband's death.

There is an obvious and necessary epilogue to our determination as to the Lysne liability. His employer, Great Plains Supply Company, which was joined upon an agency theory, also is entitled to a dismissal.

■ ■ Certain legal presumptions attend our consideration of Heartso's role in this tragedy. The law presumes a person to be innocent of any wrong; it presumes that a person has obeyed the law; and it presumes that a person has acted with proper care for his own concern. Sec. 31–11–03, subsecs. 1, 4, and 32, N.D.C.C.; Smith v. Knutson, 76 N.D. 375, 36 N.W.2d 323, 329 (1949); New York Life Ins. Co. v. Hansen, 71 N.D. 383, 2 N.W.2d 163, 167 (1941); Fried v. Olsen, 22 N.D. 381, 133 N. W. 1041, 1042 (1911). Such presumptions have controlling weight unless and until overcome by evidence showing the contrary. They exert even stronger influence where a person is killed and there are no witnesses. Hausken v. Coman, 66 N.D. 633, 268 N.W. 430, 437 (1936).

"The law, out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by accident was at the time of the accident in the exercise of ordinary care and diligence, and this presumption is not overcome by the fact of the accident even though no person saw it." Kunkel v. Minneapolis, St. P. & S. S. M. Ry. Co., 18 N.D. 367, 121 N.W. 830, 835 (1909).

■ We are not persuaded that the evidence has overcome the presumption that Heartso exercised due care. If anything, the evidence tends more to reinforce the presumption. That Lysne was unlawfully in Heartso's lane of travel immediately prior to the accident is conceded by the defendants. Lysne apparently had failed to make a driving correction that would have taken him around a gentle curve in the highway. As a result, he strayed over the centerline and went all the way to the shoulder of the opposite side of the highway before becoming aware of his error.

Because of the bend in the road, it is evident that Lysne's improper position would not have become apparent to Heartso until he already was in peril. Here was a classic case of sudden emergency. The oncoming vehicle was in Heartso's lane. With only two or three seconds to act, including reaction time, what should he do: Turn into the lane vacated by Lysne? Simply apply brakes and rely on the offender to take evasive action? Turn toward the snow-concealed hazards of the ditch? What he did in that awful, fleeting moment cannot be judged by normal standards of care. In sudden, unheralded confrontation with disaster, there is no time for judicious balancing of alternatives. The course chosen in imperative haste, while mind and muscle are horror-stricken, must be given every charitable consideration.

■ Heartso turned left. We now know it was the wrong choice, for, at about the same moment, Lysne turned right. But, without the aid of hindsight, we must say that his choice was as logical as the others available. Certainly it was not a negligent one. The law properly recognizes that negligence should not be imputed to a person because of what he does when confronted with a sudden, unanticipated emergency. Gravseth v. Farmers Union Oil Co. of Minot, 108 N.W.2d 785, 793 (N.D.1961). We therefore hold that the legal presumption that Heartso acted properly and with due care has not been successfully overcome by evidence to the contrary.

Judgment reversed.

STRUTZ, C. J., and TEIGEN, J., concur.

ERICKSTAD, J., deeming himself disqualified, did not participate; RALPH B.

MAXWELL, Judge of the First Judicial District, sitting in his stead.

PAULSON, Judge (dissenting).

I dissent from the majority opinion of this Court. The parties to this action are substantially in agreement as to the facts set forth in the case at bar. However, the findings of the majority of this Court greatly differ from the findings of the trial court, indicating that a shift in emphasis as to certain critical points in the sequence of factual events has given rise to the differing conclusion. A review of the facts is appropriate at this time in order to reach a clearer understanding of this case.

A statement of the facts of the accident, which occurred at about 10:45 a. m. on January 20, 1968, and in which all of the victims lost their lives, should be preceded by a recitation of the events leading up to the time of the accident, insofar as these events pertain to the victims. Mr. Orvin B. Lysne was the manager of the Devils Lake branch of the Great Plains Supply Company, a corporation, and Mr. Gordon Bjerke was also employed by this company. The testimony at the trial indicated that, on the day prior to the accident at about 6:45 p. m., Mr. Lysne proceeded to Pop's Liquor Store in Devils Lake and remained there until the closing hour of 1:00 a. m., during which period Mr. Lysne consumed between ten to twelve alcoholic beverage drinks, in company with various persons whom he knew and visited with at Pop's Liquor Store. Mr. Bjerke, during this period of time, had remained at the Great Plains Supply Company premises after closing hours, making some tables, pursuant to a private order. Mr. Bjerke, at about one o'clock in the morning of the day of the accident, joined a group of Great Plains' employees at the Two Spot Cafe. Mr. Lysne was a member of such group. These people remained at the Two Spot Cafe until eight o'clock in the morning, during which time they consumed food, coffee, and some alcoholic beverages.

There is no indication from the evidence that Mr. Bjerke consumed any alcoholic beverage during this period of time. Testimony was adduced indicating that Mr. Lysne did consume some alcoholic beverages during this period, and the testimony further revealed that at least some of the witnesses believed that Mr. Lysne showed slight effects from the alcohol he had consumed. Mr. Lysne and Mr. Bjerke left the Two Spot Cafe at about eight o'clock that morning and returned to the Great Plains Supply Company. After about twenty minutes, they left the company's grounds in Mr. Lysne's car, without informing anyone as to their destination. They drove to Mr. Bjerke's home in Churchs Ferry, North Dakota, located approximately 21 miles west of Devils Lake on Highway No. 2. At the Bjerke home Mr. Lysne was introduced to Mr. Bjerke's family and the two men drank copious amounts of coffee while there. Mrs. Bjerke testified that both men acted normally and revealed no signs of intoxication while they were at the Bjerke home; and that a telephone call was received at the Bjerke residence at about ten o'clock that morning from another employee of the Great Plains Supply Company, requesting Mr. Lysne's return to Devils Lake. Mr. Lysne informed such employee that he would be returning to Devils Lake shortly. Mrs. Bjerke further testified that her husband asked to ride with Mr. Lysne so that he could return to Devils Lake for the purpose of delivering the tables which he had recently completed.

The Lysne vehicle, proceeding east on Highway No. 2, at a point approximately 1½ miles west of Devils Lake, collided head on with a vehicle driven by Mr. Heartso. As a result of this collision, Mr. Bjerke and Mr. Heartso were killed immediately, and Mr. Lysne survived only a few days, never regaining consciousness.

The traveled surface of the road at the point of impact was 25 feet wide and each shoulder was 8½ feet wide, making a total width of 42 feet. While it was a cold day, the sun was shining and visibility was

good, except for a slight haze. The evidence is in conflict as to whether or not there was frost on the highway just prior to or at the time of the accident. Mrs. Bjerke's contention that there was frost present on the highway is corroborated by several pictures of the accident scene taken by a professional photographer shortly after the accident occurred. Mr. Heartso's administrators aver that there was a curve in the highway in the immediate vicinity at the point of impact, which curve probably impaired Mr. Heartso's judgment concerning the location of the Lysne vehicle on the highway. The evidence indicates that while there was a curve, it commenced some distance west of the accident scene and that at the point where the accident happened the highway runs generally straight in an east-west direction, with unimpaired visibility for at least a quarter of a mile in either direction. The Heartso vehicle came to rest following the accident along the south edge of the highway; and the Lysne vehicle came to rest along the north edge of the highway. There was a continuous tire mark on the highway 198 feet in length, originating northwest of the accident scene and terminating at the point of impact. This mark indicates that the Lysne vehicle had been traveling east in the north lane of the highway—in the westbound lane—and Mr. Lysne had attempted to return his vehicle to the south, or eastbound, lane and his vehicle had partially crossed the center line of the highway at the time his car collided with the Heartso vehicle. The testimony of the expert witnesses and a perusal of the professional photographs which depict the location of the debris resulting from the accident corroborate the conclusion of the trial judge that the impact between the two vehicles took place near the center line of the highway, with each of the vehicles being in its wrong lane of traffic. The vehicles met virtually head on. However, there are no skid marks or tire marks on the highway surface leading up to the point of impact that would indicate the position of the Heartso vehicle on the highway as it was traveling west just prior to the collision.

In consideration of the issue of liability pertaining to Mr. Heartso, the majority opinion states that the law presumes a person to be innocent of any wrong, in that a person has obeyed the law and that a person has acted with proper care for his own concern; and that these presumptions are given an even greater consideration when a person is killed and there are no eyewitnesses. The majority then cites as authority § 31–11–03(1), (4), (32), N.D.C.C.; Smith v. Knutson, 76 N.D. 375, 36 N.W.2d 323 (1949); New York Life Ins. Co. v. Hansen, 71 N.D. 383, 2 N.W.2d 163 (1941); Hausken v. Coman, 66 N.D. 633, 268 N.W. 430 (1936); Fried v. Olsen, 22 N.D. 381, 133 N.W. 1041 (1911); Kunkel v. Minneapolis, St. P. & S. S. M. Ry. Co., 18 N.D. 367, 121 N.W. 830 (1909). However, it must be noted that while these presumptions are in effect, they are so only if they are uncontradicted. They are disputable presumptions and may be contradicted by other evidence. It is my position in the instant case that these presumptions as they pertain to Mr. Heartso have been successfully rebutted. Furthermore, this Court held, in Thompson v. Nettum, 163 N.W.2d 91, 93 (1968), that:

"In a negligence action where both parties suffer from retrograde amnesia, the presumptions of due care and obeying the law apply equally to both parties and the identical conflicting presumptions balance and cancel each other." [¶ 5 of the syllabus.]

Certainly the same presumptions applied to Mr. Lysne's vehicle until subsequent evidence was admitted which rebutted these presumptions. Even if the presumptions set forth above had not been successfully rebutted, the presumptions would have canceled each other under the doctrine of Thompson v. Nettum, supra.

The majority opinion states that Mr. Heartso was faced with a classic case of

sudden emergency. An examination of the physical facts and the evidence surrounding and pertaining to the accident simply does not support this conclusion. The testimony of expert witnesses who had investigated the scene of the accident indicate, and the photographs admitted into evidence clearly reveal, that the highway is straight at the point of impact and runs in a generally east-west direction; that to the west of the accident scene there is a curve—a gentle curve, at most—but it was at a sufficient distance so as not to distort the visual perception of a driver in Mr. Heartso's position, approaching, as he was, the point of impact. Certainly if Mr. Heartso had been maintaining a proper lookout and the Lysne vehicle was on the wrong side of the road, Mr. Heartso would have had ample time and opportunity to have observed the Lysne vehicle and to have attempted evasive action. The ditch to Mr. Heartso's north side was gently contoured and would not have been hazardous to traverse in the course of evading the oncoming Lysne vehicle. The lack of skid marks would indicate that Mr. Heartso did not apply his brakes. In addition, the cars collided squarely head on, as set forth in the majority opinion. Thus, if Mr. Heartso were confronted with a sudden emergency and had attempted to avoid the accident by swerving into Mr. Lysne's eastbound lane, the cars would not have collided squarely head on. Just as the tire tracks show that prior to the impact the Lysne vehicle had been on the wrong side of the road, the tracks also show Mr. Lysne's frantic but not quite successful attempt to return to the south, eastbound lane of the road. This, too, should have been observed by Mr. Heartso. Hypothetically, even if Mr. Heartso had been traveling within his proper lane and had made a sudden swerve, or if he had swerved radically, certainly he would have lost control of his car because of the frosty condition of the highway and this would have caused his vehicle to enter into a spin and at least the impact, if there had been an impact, would have been at a different angle. Likewise, if Mr. Heartso had been traveling in the proper lane and had turned his automobile slightly to his left, his car would not have been as far over the center line as the physical evidence at the point of impact indicates. In Spielman v. Weber, 118 N.W. 2d 727, 728 (N.D.1962 [reh. den. 1963]), in paragraph 6 of the syllabus, this Court said:

> "Motorist confronted with an emergency, not of his own making, who is required to make an instant decision, is not guilty of negligence if he fails to make the wisest choice. But where such emergency is caused in part by such motorist's own acts, he cannot claim the benefit of the emergency rule."

See also Tennyson v. Bandle, 181 N.W.2d 687 (N.D.1970); Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966); Bellere v. Madsen, Fla., 114 So.2d 619, 80 A.L.R.2d 1. The trial judge found that Mr. Heartso was not maintaining a proper lookout where, on a clear day, the Lysne vehicle in the wrong lane should have been seen by Mr. Heartso for a sufficient period of time to have enabled Mr. Heartso to have taken evasive action. In addition, the physical evidence indicates that Mr. Heartso did not swerve suddenly into the eastbound lane, but in fact had been over the center line for some distance. Therefore, I uphold the finding the trial court made on this issue that the emergency doctrine does not apply to Mr. Heartso. Finally, it is my opinion that Mr. Heartso's negligence was a proximate cause of the accident and that Mr. Heartso's liability has been established.

Paragraph 17 of the trial court's findings of fact states:

> "That Orvin B. Lysne, at the time and place of the accident, was guilty of gross negligence for the reason that he drove his vehicle in the wrong lane of traffic, failed to have his vehicle under control, and failed to maintain a proper look-out prior to the time that the accident occurred, and drove his vehicle at an excessive rate of speed considering the cir-

cumstances existing at the time and place of the accident;"

There is considerable evidence concerning Mr. Lysne's use of alcoholic beverages over a period of approximately 24 hours prior to the accident. However, neither the pleadings nor the trial court's findings of fact set forth or refer to this evidence. Nevertheless it can be assumed that the trial judge in making his findings of fact did consider all of the evidence presented at the trial. § 31–11–03(15), N.D.C.C. The majority opinion frequently refers to the use of alcoholic beverages by Mr. Lysne. However, it does not consider alcoholic beverages as an issue in the case at bar. Rule 15(b) of the North Dakota Rules of Civil Procedure states:

*"Amendments to conform to
the evidence.*

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

See Helgeson v. Locken, 130 N.W.2d 573 (N.D.1964); Kucera v. Kucera, 117 N.W. 2d 810 (N.D.1962); Underwriters Salvage Co. v. Davis & Shaw Furniture Co., 198 F.2d 450 (U.S.Ct.App. 10th Cir. 1952). In addition, the issue of alcoholic beverages will be considered by this Court on trial anew, as we held in Steffen v. Boyle, 115 N.W.2d 8, 9 (N.D.1962), in paragraph 1 of the syllabus:

"Where an issue not raised by the complaint is tried, without objection, failure to amend the complaint does not affect the results of the trial, and the issue will be considered by this court in a trial de novo."

The majority has cited Holcomb v. Striebel, 133 N.W.2d 435 (N.D.1965), wherein the term "gross" as applied to the negligence of a motorist in an action under the guest statute has reference to the mental attitude of the motorist in regard to the consequences which he should have foreseen and implies such gross recklessness as shows indifference to the consequences. I agree that gross negligence infers mental attitude. However, in reality, mental attitude is not a subjective matter but is an objective matter, to be determined by overt acts of the negligent party.

The majority opinion states:

"Even if it was because he was intoxicated, it does not follow that it was gross negligence. It could as well have been ordinary negligence superinduced by intoxication.",

and cites Borstad v. LaRoque, 98 N.W.2d 16 (N.D.1959). Ordinary negligence superinduced by intoxication produces the same result as gross negligence and removes the protection of the guest statute as it applies to the host driver, under Borstad v. LaRoque, *supra.* Paragraph 2 of the syllabus of *Borstad, supra,* 98 N.W.2d at 18, states:

"Injury to or death of a guest proximately results from the intoxication of the owner, driver, or person responsible for the operation of a vehicle under the 'guest statute', when the ordinary negligence of the host is a proximate cause

of the mishap and such negligence is superinduced by his intoxicated condition."

This Court held in *Borstad, supra*, 98 N. W.2d at 24, as follows:

"In the light of the foregoing definitions which we approve, we hold that liability of the host under the 'guest statute' is established when, by reason of intoxication, a host's normal mental and physical faculties for the safe and prudent operation of the motor vehicle are appreciably impaired and ordinary negligence of the host is thereby induced which proximately causes the mishap out of which the guest's injuries and damages arise."

The facts in this case bring it within the doctrine enunciated by Borstad v. La-Roque, *supra*. I do not believe that Borstad v. LaRoque, *supra*, should be inferentially overruled and, if this Court is going to overrule *Borstad*, it should so state.

The next issue is whether Mr. Bjerke assumed the risk in riding in an automobile driven by Mr. Lysne. In Borstad v. La-Roque, *supra*, 98 N.W.2d at 25, this Court said:

"As applied to the defense raised by the host driver in an action by his guest passenger where liability of the host arises in tort, the guest will be deemed to have 'assumed the risk' of injury arising from the mishap when (1) the guest has knowledge of a situation that is dangerous beyond that normally inherent in the operation of a vehicle whether caused by the obvious incompetence of the driver or by the dangerous condition of the vehicle, or otherwise, (2) an appreciation of the danger and a voluntary choice to encounter it, and (3) an injury proximately caused by the danger presented. This defense is not available if wrongful conduct of third persons was a proximate cause of the mishap, unless such conduct, like any other contributory cause, could reasonably have been anticipated by the plaintiff at the time the risk

was assumed and thus served to compose the danger."

Thus I conclude that this question would not apply specifically to the liability of Mr. Heartso since Mr. Bjerke could not have anticipated Mr. Heartso's negligence, nor was Mr. Bjerke a party to it. However, it is necessary to determine whether Mr. Bjerke assumed the risk when he rode with Mr. Lysne. Where the guest has knowledge of substantial drinking of alcoholic beverages by the driver and there is evidence tending to show that such drinking was a contributing cause of the driver's negligence, the guest is not barred as a matter of law except where his knowledge of the physical incapacity of the driver and the surrounding circumstances are such that reasonable men could draw but one inference as to his negligence. Thus, this question is one for the jury or, as in the case at bar, for the trier of facts. See Sahli v. Fuehrer, 127 N.W.2d 900 (N.D. 1964). The record reveals that Mr. Bjerke had no reason to believe that Mr. Lysne was under the influence of alcoholic beverages. He did not show any signs of being incapacitated because of drinking, during the period of time which elapsed either while he was visiting at the Bjerke residence or starting the return trip to Devils Lake. Mr. Bjerke had ridden with Mr. Lysne from Devils Lake to the Bjerke home in Churchs Ferry. Mrs. Bjerke also testified that when they arrived at the Bjerke home and had coffee, they did not appear to be under the influence of alcoholic beverages. Therefore, it cannot be said that when Mr. Bjerke agreed to ride back to Devils Lake with Mr. Lysne, Mr. Bjerke was in fact aware of the probability that Mr. Lysne would operate his automobile in a negligent manner, superinduced by Mr. Lysne's consumption of alcoholic beverages.

The issue of contributory negligence as it applies to Mr. Bjerke is not considered, for the reason that the record does not reveal any acts on Mr. Bjerke's part which contributed to the accident.

**508**

This Court has repeatedly held that where an appellant demands a trial de novo and a retrial of the entire case in an appeal from a judgment in an action tried to the court without a jury, the findings of the trial court will be given appreciable weight by the Supreme Court, especially where such judgment is based upon the testimony of witnesses who appeared in person before the trial court. Koistinen v. Farmers Union Oil Co. of Rolla, 179 N. W.2d 327 (N.D.1970); Renner v. Murray, 136 N.W.2d 794 (N.D.1965); Goheen v. Gauvey, 122 N.W.2d 204 (N.D.1963); Strobel v. Strobel, 102 N.W.2d 4 (N.D. 1960). In the case at bar, the trial was of considerable length and many witnesses took the stand. However, there were no surviving eyewitnesses to this automobile accident which claimed three lives. Thus all of the testimony was adduced from those persons who were in contact with the principals during the hours before the accident and from those experts who made a physical examination of the physical facts at the scene of the disaster. Certainly if this Court is ever to give appreciable weight to the findings of a trial court, it would have to do so in the instant case where the trial court was required to consider all of the evidence in order to make numerous and complex findings of fact before rendering a decision. The trial court's objective advantage in a case such as this one must be given appreciable weight by this Court.

The majority opinion has stated that the trial judge neither dictated into the record his *ratio decidendi* nor did he issue a written memorandum opinion. The majority opinion states:

"All we have are findings of fact which, although signed by him, were written with the partisan pen of plaintiff's counsel."

I submit that findings prevail over a memorandum opinion. If there had been a memorandum opinion issued and it had contained any inconsistency with the find-ings, the findings would have prevailed. Kack v. Kack, 142 N.W.2d 754 (N.D. 1966); Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966). In addition, it is common practice in all trial courts in this State for prevailing counsel to prepare the findings, order for judgment, and judgment. It is submitted that once the findings have been approved by the trial judge, such findings become the findings of the court. I would affirm the judgment of the trial court.

KNUDSON, J., concurs.