**Milton K. HIGGINS, Plaintiff and Appellant,**

v.

**Lydia DUPRAT, Defendant and Respondent.**

No. 7953.

Supreme Court of North Dakota.

Feb. 8, 1963.

———◆———

Higgins & Murphy, Bismarck, for plaintiff and appellant.

John A. Zuger and Catherine E. Morris, Bismarck, for defendant and respondent.

BURKE, Judge (on reassignment).

Plaintiff brought this action to recover attorney's fees alleged to be due him from the defendant. In her answer the defendant denied that she had ever employed the plaintiff. The case was tried to the court without a jury and the trial resulted in a judgment of dismissal in favor of the defendant. Plaintiff has appealed from the judgment and demanded a trial anew in this court. Only issues of fact are raised upon this appeal.

Plaintiff claimed that he represented the defendant in litigation concerning the contest of the will of defendant's father, Peter Rennick. Shortly after Peter Rennick's death, his widow, the defendant and six other children of his first marriage employed a Bismarck attorney to probate his last will. Shortly after probate proceedings had been commenced, Albert Rennick, also a surviving son of Peter Rennick's first marriage produced a prior joint will of Peter Rennick and his first wife and offered it for probate. Upon this event, the attorney representing the widow and the seven other children wrote to each of the children, advising them that the widow's interest might become adverse to theirs, and suggesting that the children employ another attorney to protect their interests. This letter was dated March 14, 1957. Lena Bey, a sister of defendant, after receiving this letter consulted an attorney at her home in Vancouver, Washington. On March 19, 1957, the Washington attorney called the plaintiff by telephone. He advised the plaintiff that he had been retained by Lena Bey, on behalf of herself and her five sisters and one brother to oppose the probate of the will proposed by the brother, Albert. He asked plaintiff if he were in a position to accept a reference of the case upon a contingent fee basis. Plaintiff agreed to take the case.

On the same day the Washington attorney wrote a letter to William Rennick, at Fairmont, N. D., advising him of the con-

sultation with his sister, Lena Bey. In this letter he stated:

"I suggest that you and the six girls retain a law firm in Bismarck to investigate the situation and be prepared to force Albert to prove the validity of the first will. * * *

"Each of the girls should write to William letting him know whether he should hire the attorneys to work for you." A copy of this letter was sent to each of the six sisters.

On April 2, 1957, the Washington attorney wrote plaintiff advising him that "Lena Bey has told us that she has authority from her sisters to retain one firm," and asking him to take the case. On April 6, 1957, plaintiff wrote to the Washington attorney accepting the retainer. Thereafter, four of the sisters and the brother, William, authorized the plaintiff to appear for them. Plaintiff entered an appearance in behalf of all six sisters and William and filed a brief in support of the will offered for probate by the surviving widow and her attorney. This will was admitted to probate on June 26, 1957. No appeal was taken from the order admitting this will to probate and it became final on June 26, 1957. On that same day, defendant wrote a letter to the executor of her father's will, in which she stated that the attorney for the widow and executor was the only attorney she had heard from in North Dakota. She wrote, "I know nothing of any other attorneys in North Dakota and have had no dealings with them. Haven't had any of them contact me."

Thereafter the brother, Albert, commenced an action in district court in which he alleged that the joint will of his father and mother constituted a contract to make a will and he asked specific performance of the alleged contract. In this suit plaintiff appeared for the four sisters and the brother from whom he had direct authorization to appear. He did not represent the defendant. This suit was carried to a suc-

cessful conclusion by the plaintiff and the widow's attorney, who also represented defendant in the case.

The facts related so far are undisputed. It appears therefore that neither the forwarding attorney nor the plaintiff had any correspondence or communication of any kind with the defendant. The Washington attorney accepted the retainer from Lena Bey upon the strength of her assurance that she had authority to represent her sister, the defendant. Plaintiff accepted the forwarded business upon the basis of the representations of the Washington attorney. Therefore the questions are: Has plaintiff established by a preponderance of the evidence that the defendant authorized her sister, Lena Bey, to employ an attorney to represent her in the pending litigation or that she subsequently ratified such employment? Upon these issues the testimony of the witnesses is in direct conflict.

Mrs. Bey testified that, after she received the letter of March 14, 1957, from the attorney for the widow, she wrote to all of her sisters and her brother, William. She said: "I informed them that we must hire a lawyer to defend us." She stated that in answering this letter the defendant stated: "Go ahead and get a lawyer." She also stated that she received this letter before she saw her Washington attorney the first time. It is highly improbable that this last statement is true.

The elapsed time, between March 14, 1957, when the first letter was mailed to her from Bismarck and March 19, 1957, the day she called on her attorney in Vancouver, would not be sufficient to permit the successive receipts of correspondence by ordinary mail from Bismarck, N. D. to Vancouver, Washington, then from Vancouver, Washington to Berkeley, California, the home of the defendant, and finally back from Berkeley, California to Vancouver, Washington.

The record shows, however, that Mrs. Bey did write to the defendant the day

she saw her Washington lawyer. In that letter she wrote:

"Now I'm not telling you what to do. If you want to hire your own lawyer to fight it, it's O.K. * * * I sure do wish Lydia that you could possibly go back to Bismarck and get into court with a good lawyer and fight. * * * My lawyer is sending a letter to all of you to let Bill hire a lawyer in Bismarck and go ahead and fight for all of us." This letter makes it clear that Mrs. Bey had no authority to bind the defendant when she first engaged a lawyer in Vancouver.

Mrs. Bey also testified that, shortly after she had engaged an attorney, the defendant called her by telephone and inquired about attorney's fees. According to Mrs. Bey, defendant was worried about how the attorney's fees would be paid in the event the litigation was unsuccessful. She expressed concern that liens might be filed against her property in California. Mrs. Bey stated that both she and her husband assured the defendant that the attorneys had accepted the case for a contingent fee and that there would be no fees if the case was lost and that the defendant then stated: "It was all right." Lena Bey's husband, Henry Bey, corroborated her testimony in so far as it related to a discussion of how the attorneys fees were to be paid.

Mrs. Duprat, the defendant, categorically denied that she had ever told her sister, Lena Bey, either by letter or by telephone, to employ counsel for her. She stated that she, both by letter and telephone, asked the attorney for the widow and executor to protect her interests and that he agreed to do so.

 Upon the record the trial court found that the preponderance of the evidence did not support plaintiff's claim. Upon a trial anew upon appeal in this court the findings of the trial court, who saw and heard the witnesses, are entitled to appreciable weight. Shong v. Farmers' & Merchants' State Bank, Inc., Hutchinson, Minnesota, N.D., 70 N.W.2d 907; Stark County v. Koch, N.D., 107 N.W.2d 701.

 We have considered the evidence and we find that Lena Bey's testimony that she had written authorization from the defendant to act for her, before she first engaged an attorney in Vancouver, Washington, is incredible. We also find that Mrs. Bey's testimony as to her sister's subsequent alleged ratification, by telephone, of the employment of an attorney is so indefinite that it cannot stand in the face of defendant's positive denials and the trial court's findings.

The judgment of the district court is therefore affirmed.

MORRIS, C. J., and TEIGEN and STRUTZ, JJ., concur.

ERICKSTAD, J., did not participate.