**Ivan RENNER, Plaintiff and Respondent,**

**v.**

*Glenn MURRAY, Defendant and Appellant.*

**No. 8232.**

Supreme Court of North Dakota.

Sept. 3, 1965.

Floyd B. Sperry, Bismarck, for appellant.

Wheeler, Daner & Glaser, Bismarck, for respondent.

ERICKSTAD, Judge.

This is an appeal by the defendant, Glenn Murray, from a judgment of the District Court of Burleigh County entered in favor of the plaintiff, Ivan Renner, for the dismissal of Mr. Murray's counterclaim. This case was consolidated for trial with the case of Murray v. Renner, 136 N.W.2d 799. Trial de novo is demanded.

Mr. Renner alleged in his complaint that, because of Mr. Murray's negligent operation of an automobile, he was caused certain personal injuries, property damage, and other losses, for which he was entitled to be recompensed. Mr. Murray denied the material allegations of the complaint and interposed a counterclaim, asking that judgment against Mr. Renner be awarded in his favor for certain special and general damages suffered as the result of the negligent operation of a certain automobile by Mr. Renner. At the commencement of the trial before the District Court, without a jury, Mr. Renner waived his claim for a money judgment against Mr. Murray.

There is no proof that Mr. Renner's reply denying his negligence was served upon Mr. Murray or his counsel, but such a reply was filed with the Clerk of District Court at the commencement of the trial. Counsel for Mr. Renner, in his oral argument before this court, said that the reply was served on counsel for Mr. Murray in open court. This was not denied by counsel for Mr. Murray.

Under these circumstances, the pleadings may not be said to admit the negligence of the plaintiff, Mr. Renner; and thus Mr. Murray has the burden of proving by a preponderance of the evidence that Mr. Renner was negligent and that his negligence was a proximate cause of Mr. Murray's damages.

The next question we are faced with on this appeal is whether a demand for trial de novo has been properly made. That portion of the applicable statute reads as follows:

28-27-32. Appeals in all actions tried to the court without a jury.—* * A party desiring to appeal from a judgment in any such action shall cause a statement of the case to be settled within the time and in the manner prescribed by chapter 28-18, and shall specify therein the questions of fact that he desires the supreme court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court. Only such evidence as relates to the questions of fact to be reviewed shall be embodied in this statement. If the appellant shall specify in the statement that he desires to review the entire case, all the evidence and proceedings shall be embodied in the statement. The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the

entire case * * *. North Dakota Century Code.

In this connection, the brief of the respondent, Ivan Renner, states: "No copy of the settled statement of the case has been served upon this respondent, but it is believed that it contains no demand for a trial de novo. This appeal, therefore, is limited to issues properly raised by the appellant by specification of error."

■ Our examination of the settled statement of the case, as certified by the District Judge, however, discloses that it contains a demand for trial de novo. Accordingly, this court will retry the entire case on appeal.

Before we may properly assess the evidence in this case, we are required to determine whether the record of Mr. Renner's conviction of the crime of aggravated reckless driving arising out of this accident should have been received in evidence in the trial of this case. This issue arose in the trial court when counsel for Mr. Murray, on cross-examination of Mr. Renner, asked him the following question, the objection to which was sustained by the trial court:

Q. Now, Mr. Renner, were you convicted for a traffic offense as a result of this accident on September 7, 1961?

Counsel then offered in evidence a certified copy of the conviction of Mr. Renner of the crime of aggravated reckless driving, arising out of the collision on which the claims in this civil suit depend.

■ The record of the conviction was offered in evidence by counsel for Mr. Murray as proof of Mr. Renner's violation of the rules of the road and thus as evidence of his negligence. The trial court, however, refused to receive the record of the conviction in evidence. We believe that the trial court's rulings were correct. This is in line with an earlier decision of this court, involving a civil action for damages arising out of assault and battery, in which this court said:

* * * The plaintiff had no right to establish in the record the proof of the conviction of the defendant questioned in a criminal case of the same assault and battery. * * * He might show in evidence proof of the conviction of the defendant upon a criminal charge for this same alleged assault and battery, when the foundation was first laid that the defendant had pleaded guilty, all for the purpose of an admission against interest. * * *

Engstrom v. Nelson, 41 N.D. 530, 171 N.W. 90, at 91.

A 1964 decision of the Supreme Court of Iowa is in accord:

I. The general rule is that the record of a conviction or acquittal in a criminal prosecution is not admissible in evidence in a civil action to establish the truth of the facts on which it was rendered. Annos. 31 A.L.R. 261, 18 A.L.R.2d 1287; In re Johnston's Estate, 220 Iowa 328, 335, 261 N.W. 908, 911, 262 N.W. 488, and citations; Bates v. Carter, 225 Iowa 893, 894, 895, 281 N.W. 727, 728, and citations.

II. However, an exception to this rule is that the record in a criminal case showing a plea of guilty is admissible in a subsequent civil action against the accused arising out of the same offense, as his deliberate declaration or admission against interest. 20 Am.Jur., Evidence, section 648; Annos. 31 A.L.R. 261, 18 A.L.R.2d 1287; Root v. Sturdivant, 70 Iowa 55, 29 N.W. 802; Hauser v. Griffith, 102 Iowa 215, 71 N.W. 223; Boyle v. Bornholtz, 224 Iowa 90, 275 N.W. 479.

Book v. Datema, Iowa, 131 N.W.2d 470, at 471.

See also the decision rendered by the Supreme Court of Pennsylvania in 1954 in Gregg v. Fisher, 377 Pa. 445, 105 A.2d 105.

That this is the rule in California, see Department of Water & Power of City of Los Angeles v. Allis-Chalmers Mfg. Co., 32 F.R.D. 204 (S.D.Cal.1963).

We therefore shall exclude from our consideration the record of Mr. Renner's conviction of the crime of aggravated reckless driving which arose out of the same facts upon which this civil action was tried and which was not based upon a plea of guilty but upon a finding of the trial court in the criminal case.

There appears to be no question but that the facts show that Mr. Renner was negligent in failing to keep his automobile under control and in proceeding in the left or east lane of traffic while traveling in a southerly direction.

The basic question as it relates to Mr. Renner's liability, then, is whether Mr. Murray was contributorily negligent. We believe that the evidence shows that he was contributorily negligent.

■ In arriving at this conclusion we recognize the rule that:

> Where an appeal is taken pursuant to Section 28-2732, NDRC 1943 and the appellant demands a retrial of the entire case, the findings of the trial court must be given appreciable weight by the supreme court, especially when based upon the testimony of witnesses who appeared in person before the trial court.

Pauly v. Haas (Syllabus 3), N.D., 84 N.W.2d 302.

See also: Watson v. Kresse, N.D., 130 N.W.2d 602; Goheen v. Gauvey, N.D., 122 N.W.2d 204; Higgins v. Duprat, N.D., 120 N.W.2d 16.

The following facts are not disputed by the parties:

On the morning of September 7, 1961, Ivan Renner was driving a 1960 Chevrolet automobile in a southerly direction about three miles south of Beulah on North Dakota Highway 49, which is a graveled road, when his vehicle collided with another vehicle. On this same morning, Glenn Murray and his wife, Beatrice, left their farm and drove approximately one-half mile east to the intersection of the scoria-surfaced road on which his farm is located and Highway 49. Upon reaching the highway, Mr. Murray executed a left-hand turn which brought his vehicle onto Highway 49.

About 330 feet north of the intersection there is a dip in the highway. When a vehicle is in this dip, its driver cannot see a vehicle at the intersection; nor can a driver of a vehicle at the intersection see a vehicle when it is in the dip.

The automobile driven by Mr. Renner collided with the automobile driven by Mr. Murray approximately 60 feet north of the center of the intersection. The left front of the Renner vehicle struck the left doorpost of the 1957 two-door Ford driven by Mr. Murray, causing extensive damage to both automobiles. Mr. Murray received severe personal injuries, including a crushed chest and injury to his left shoulder. Mrs. Murray received less serious injuries.

The testimony concerning how the collision occurred, however, is in conflict.

Mr. Murray states that he stopped his vehicle at the stop sign marking the intersection of the scoria-surfaced road (which extended in a west-east direction) with Highway 49 (which extended in a north-south direction) three miles south of Beulah; that he looked in all directions; that he activated his turn signals, indicating an intention to turn left (north); that when no vehicle could be seen in any direction, he drove his vehicle into the intersection, turning left after his vehicle passed the center of the intersection; and that his vehicle then traveled north in the east lane until he abruptly turned it to the east to avoid being hit by the Renner vehicle, which was traveling south in the east

lane at a speed which he estimated at 85 miles per hour. He further testified that he knew that he stopped because he had a habit of stopping at that intersection before entering the highway.

Mrs. Murray for the most part corroborated her husband's testimony.

Counsel for Mr. Renner called two witnesses, whose testimony conflicted with Mr. Murray's statement that he had a habit of stopping at the stop sign marking the intersection of Highway 49 with the road leading to his ranch.

Ivan Renner testified that as his vehicle came out of the dip in the highway, the Murray vehicle was approaching the intersection from the west at a distance of about 50 or 60 feet; that the Murray vehicle did not stop before it entered the intersection; and that Mr. Murray turned left by driving "kittycorner" across the intersection in the west lane and was still in the process of turning when the collision took place.

He further testified that he had been going 55 or 60 miles per hour when he first saw the Murray vehicle and that he let up on the gas on his automobile, thinking that the Murray vehicle would stop. He stated that when he saw that the Murray vehicle did not stop and that it was coming on his side of the road, he angled his automobile to the east side of the road and used his brakes in an attempt to avoid hitting the Murray vehicle in the west lane, but that the two vehicles collided while Mr. Murray's automobile was still in a diagonal position on the highway. Mr. Renner estimated his speed at 15 or 20 miles per hour at the time of the impact and described the speed of the Murray vehicle as being slow.

It should be noted that Mr. Renner, on cross-examination, acknowledged that he had testified in a prior criminal proceeding which arose out of these same facts that he did not know whether Mr. Murray had stopped his vehicle before entering the intersection.

Lynn Amsden, the Highway Patrolman who investigated the accident, testified that on the highway he found tire marks, which he called "skid marks," 159 feet in length, extending in a northwesterly-southeasterly direction, and that the west tire mark at the point where it terminated was about 11 feet from the east edge of the highway. He also found skid or sliding tracks which led to the Renner vehicle from the point where the 159 feet of marks terminated.

He stated that he found debris and broken glass on the east side of the highway only; that the automobiles came to rest east of the highway in a locked position; that there were no tracks or gouges on the west side of the highway; and that he found two gouges on the highway. The north gouge was 4.5 feet from the east edge of the highway; and the south gouge was 12 feet from the east edge and led into the ditch.

On cross-examination, Patrolman Amsden in essence was asked: If one vehicle struck another broadside (which the damage shows occurred in this case), would the impact tend to increase the pressure on the right wheels and decrease the pressure on the left wheels of the vehicle hit broadside? His answer was, "Ordinarily, yes."

He said it was possible that that was what occurred here, but that he was of the opinion that the north gouge, 4.5 feet from the east edge of the highway, was caused by the right front wheel of Mr. Murray's vehicle, and that the south gouge, 12 feet from the east edge of the highway, was caused by the left rear wheel of the Murray vehicle. He gave no reasons for his conclusions.

■■ Under these circumstances, where the oral testimony is in complete conflict, the physical evidence is especially important. In this connection, the trial court found that the two gouges on the highway were caused by the right front and right rear wheels of the Murray vehicle at the time of impact, and that, as the Murray

vehicle was approximately 6 feet wide and the highway was 28 feet wide, the rear portion of the Murray vehicle extended over the center line of the highway at the time of impact. We believe that the trial court arrived at a reasonable conclusion from this evidence. This conclusion supports Mr. Renner's contention that Mr. Murray, while proceeding in a northerly direction, drove his vehicle in the west lane of traffic, causing Mr. Renner, who was proceeding in a southerly direction, to turn his vehicle into the east lane of traffic in an attempt to avoid a collision with the Murray vehicle. We believe that, by driving in this manner, Mr. Murray was negligent, and that his negligence contributed to and was a proximate cause of the collision from which he incurred his personal injuries and other damages.

It is well established in this state and elsewhere that a plaintiff cannot recover damages for injuries where the plaintiff's own negligence contributed proximately to the injuries for which recovery is sought. * * *

Stelter v. Northern Pac. Ry. Co., 71 N.D. 214, 299 N.W. 310, at 313.

See also: Hutchinson v. Kinzley, 66 N.D. 25, 262 N.W. 251.

■ Contributory negligence is a complete bar to recovery. Wolf v. Northern Tank Lines, Inc., N.D., 113 N.W.2d 675; Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424.

Counsel for Mr. Murray contends that, considering the speeds of the two vehicles in conjunction with the other facts of this case, Mr. Renner's testimony is unbelievable. It is his view that it would have been impossible for Mr. Murray's vehicle to travel 60 feet north of the center of the intersection before being hit by the Renner vehicle if Mr. Renner's vehicle (being approximately 300 feet north of the center of the intersection) was traveling at 60 miles per hour or 88 feet per second and Mr. Murray's vehicle (being 50 or 60 feet

west of the intersection when first seen by Mr. Renner) was traveling at 10 miles per hour or approximately 15 feet per second. This analysis of the evidence ignores Mr. Renner's testimony that he braked his vehicle and reduced its speed to approximately 15 miles per hour just prior to impact. It also fails to recognize that the 10-miles-per-hour rate of speed was only an opinion of Mr. Murray and thus only an estimate.

For the reasons stated in this opinion the judgment dismissing the counterclaim of the defendant, Mr. Glenn Murray, is affirmed.

BURKE, C. J., and STRUTZ, TEIGEN, and KNUDSON, JJ., concur.