**Beatrice MURRAY, Plaintiff and Respondent,**

**v.**

**Ivan RENNER, Defendant and Appellant.**

**No. 8233.**

Supreme Court of North Dakota.

Sept. 3, 1965.

Wheeler, Daner & Glaser, Bismarck, for appellant.

Floyd B. Sperry, Bismarck, for respondent.

ERICKSTAD, Judge.

This is an appeal by the defendant, Ivan Renner, from a judgment of the District Court of Burleigh County in favor of the plaintiff, Beatrice Murray, in the sum of $3,288.76, including costs of $65.25. Trial de novo is demanded.

In her complaint Mrs. Murray alleged that, as the result of the negligent, careless, and reckless conduct of Ivan Renner in the operation of his vehicle, culminating in a collision between the vehicle which was driven by her husband and in which she was a passenger and the vehicle driven by Ivan Renner, she suffered personal injuries which caused her great pain of body and mind, required her to be hospitalized, and rendered her unable to work, for which she alleged she was entitled to a judgment in the sum of $10,000 in general damages and $373.61 in special damages.

In answer, Ivan Renner in essence admitted that a collision occurred between the vehicles driven by the parties described in the complaint on the date and at the place shown therein but denied all other allegations.

The case was consolidated for trial with the case entitled Renner, Plaintiff, v. Murray, Defendant, which is filed in this court as Case No. 8232. The facts are as stated in that case, now published in 136 N.W. 2d 794.

In his brief on appeal Mr. Renner states:

Ivan Renner has appealed from the judgment entered against him in favor of Beatrice Murray and demanded a trial de novo in this court. The appeal was taken for just one reason. It is the contention of the appellant Renner that the trial court award of $3,223.51 is excessive under the evidence.

Accordingly, we shall restrict our consideration of this case to this issue.

In support of his contention that the award is excessive, Mr. Renner points out that Mrs. Murray's special damages amount only to the sum of $373.51. The following is an itemization of those damages:

| | |
|---|---|
| Trinity Hospital, Minot | $165.54 |
| Hazen Hospital, Hazen | 150.47 |
| N. W. Clinic, Minot | 20.00 |
| Dr. Arthur Ewert, Beulah | 37.50 |
| Total | $373.51 |

Further in support of his contention that the damages were excessive, Mr. Ren-

ner points out that on cross-examination Mrs. Murray was asked the following questions and gave the following answers:

Q. How much do you think the Court should allow you for damages sustained in this accident?

MR. SPERRY: We object to that, Your Honor, on the ground that it's improper cross-examination.

MR. WHEELER: I submit, Your Honor, that she's coming into this Court asking for reimbursement and that it is proper cross-examination.

MR. SPERRY: Well, we couldn't ask her that. I don't believe it would be proper to try to prove her damages in that way. I think that's something purely for the Court to determine.

THE COURT: Well, the objection is overruled. You may answer.

A. Well, I wouldn't know.

Q. (By Mr. Wheeler) Well, you feel that you are entitled to something more than this $376.00, don't you?

A. Oh, yes, I do. I surely do.

Q. Well, can't you tell us the amount that you feel would adequately compensate you?

A. Well, I certainly went through a lot of stress and strain, I mean, with my husband in the condition he was in and with my own suffering. I certainly think it's worth a great deal more than that.

Q. Well, there is no mention in your Complaint about any suffering that you sustained by reason of your husband's injuries. As I read your Complaint you are looking for compensation for the injuries and pain and suffering which you sustained and that's all described in the Complaint and this is what you are limited to, and it would be helpful to us if you would give us some indication of the amount of money to which you feel you are entitled.

A. Well,—

Q. That which you feel is reasonable.

A. Well, $1,000.00 with the expenses paid.

Shortly after the aforementioned answer was given a recess was taken and following the recess Mrs. Murray was returned to the stand and asked by her attorney if she had given further thought to the matter of her damages. The record in this connection reads as follows:

BY MR. SPERRY:

Q. Mrs. Murray, when you were on the stand before, you were asked by Mr. Wheeler what you considered to be a reasonable amount of damages for the injuries that you suffered from this accident, and you gave him an answer. Now, have you given further thought to that matter?

A. Yes.

MR. WHEELER: I object, Your Honor. The witness candidly answered the question after much thought, a long pause, and now that we've had a recess and their attorney has had a chance to counsel her further or coach her, he attempts to bring her back and refute her earlier testimony, which I submit is improper.

MR. SPERRY: Now, we resist certain aspects of that statement made by Mr. Wheeler which he knows are not justified because this Complaint was served upon him several days ago. And, for the record, it was prepared after I had consulted with this Plaintiff. And I think that it was a question of which she should have been given a right to ponder for more than a second or two that she took while she was on the witness stand. I think

she has a right to correct the record with reference to that.

MR. WHEELER: Your Honor, she no doubt had given it some thought before the Complaint was drawn and could have needed no time here. In fact, objection to the identical question has already been sustained once.

THE COURT: Well, she has given a definite answer and I suppose that this would be to probably impeach his own witness, but you may answer. We'll overrule the objection.

THE WITNESS: What's the question?

MR. SPERRY: You may answer the question now, Mrs. Murray.

THE COURT: You want that read back to you?

THE WITNESS: Yes, please.

THE COURT: Read the question back.

(Question and answer read by reporter.)

A. Yes, I have.

Q. (By Mr. Sperry) And after giving it additional thought, Mrs. Murray, is your answer still the same?

A. No, it's not.

Q. In your opinion what would be reasonable damages for these injuries, including your pain and suffering?

A. Well, I think about $10,000.00.

Q. Now, is that the amount that you had given me before we prepared this Complaint?

A. Yes, it is.

MR. SPERRY: That's all, Mr. Wheeler.

MR. WHEELER: I have no questions.

Mr. Renner argues that the award of $2,850 as general damages (being 285 per cent of the amount which the claimant thought reasonable) was shocking, unrealistic, and unconscionable, and therefore should be reduced.

Mrs. Murray, however, contends that the question posed concerning what she thought would be reasonable compensation was improper and, as objected to by her counsel, the answer should not have been permitted in evidence; and, further, that on careful consideration of the question she revised or corrected her answer, which she was entitled to do.

Neither of the parties has cited any authority in support of his views.

Dr. Arthur Ewert of Beulah, who first attended Mrs. Murray's injuries, said she had a soft tissue injury (a cut) of the knee and that with proper exercise she could recover full use of her knee; that her left ninth rib was broken; that one of her elbows had a soft tissue injury; and that she was transferred from the hospital in Hazen to the hospital in Minot only because of the grave condition of her husband.

Mrs. Murray was a patient from September 7, 1961, to September 10, 1961, in the hospital at Hazen and from September 10, 1961, to September 17, 1961, in the hospital at Minot.

Dr. A. Malcolm Cameron, who attended Mrs. Murray's injuries while she was a patient in the hospital at Minot, reported as follows:

\* \* \* \* \* \*

When seen by me she was clear mentally and in satisfactory condition. There was a laceration sutured on the chin and a laceration sutured on the left elbow, both of which were small and were in satisfactory condition. Her right knee demonstrated moderate swelling and contusion. She complained of mild pain in her left chest but no x-ray was obtained here at Trinity.

Her hospital course was very satisfactory. She was up in a wheelchair by the 12th of September. By the 14th of September the knee was less swollen and painful. On the 15th of September, sutures were removed from the chin and elbow which were well healed. On the 16th of September she was walking with help. On the 17th of September she was allowed to go home and was advised that her knee would require exercises of a graduated nature and that she would probably recover good function of the knee although not complete function.

Subsequently, she was not seen officially in the office although she did accompany her husband on his visits sometimes to the office. At this time they appeared to be satisfied with her progress. However, I have never examined her knee since her discharge from the hospital in regard to range of motion and other recovery data.

Part of Mrs. Murray's testimony in regard to her injuries, care and treatment, pain and suffering, disability, and residual effects was as follows:

Q. While you were in the Hazen Hospital were you—well, tell me how you were cared for, just what was done to you by your doctors.

A. Well, they put some stitches in my face and in my left elbow and quite a number of stitches in my kneecap and they bandaged my leg up and they had it sandbagged for four days.

Q. How many stitches did you receive in your face in the cuts that you had there?

A. I had three stitches in my face and three in my elbow, and I think there was about eight in my knee.

Q. Did you suffer any pain from the injuries?

A. Yes, I did.

Q. Will you describe that.

A. Well, my rib, my fractured rib, was very painful. They had to put a rib harness on me and that was very difficult, painful. And my leg, I had to keep that straight, lay flat on my back for the four days when I was in the hospital.

Q. Do you suffer any pain from those injuries at the present time?

A. Just my knee. It still pains me quite a little.

Q. What was the injury to your knee?

A. It was a big hole gouged right in the center of the kneecap.

Q. When you arrived at the Minot hospital did you walk into the hospital—

A. No, I didn't.

Q. —on your own?

A. No.

Q. How were you taken into the hospital?

A. They put me in a wheelchair, wheeled me in.

Q. And then how long did you remain there?

A. I remained in the Minot hospital seven days. From Sunday to Sunday.

Q. Where did you live after you first returned or left the hospital?

A. I went home with my daughter, stayed overnight there, and then I had to go back to Beulah and take care of some business matters and then I went up to Dunn Center and stayed with my other daughter there a couple days and then I went back up to Minot and stayed with my husband for quite some time.

Q. After you returned to Minot on that occasion that you just referred to did you remain there then until your husband was discharged?

A. No, I think I went home for a couple days and then went back when we—then brought him home.

Q. Were you able to perform your normal work around the home after you returned from Minot?

A. No, I did not right away, no.

Q. Were you able to do any work at all immediately after you left the hospital at Minot?

A. No, I didn't.

Q. How long was it before you were able to do your work?

A. Well, I didn't do anything to amount to anything until Mr. Murray came home from the hospital.

Q. Well, that was about a month after the accident,—

A. Yes.

Q. —was it not? And did you do your regular work after that?

A. No, I had a hired woman come in and do my cleaning for quite some time, and my daughters helped me with the washing and ironing, came and helped me out.

Q. How long would you say it was before you were able to do all of your work like you had done before the accident?

A. Oh, a couple months, I imagine.

The following is a portion of the cross-examination of Mrs. Murray relating to her knee injury:

Q. * * * I'm concerned about the fact that this physician described the sutures which were in your body when you arrived at Minot and he

doesn't mention—he mentions a mild contusion of the right knee but no suturing.

A. Well, he took them out.

Q. You did have sutures in your—

A. Absolutely. I've got a big scar here to prove it.

Q. All right. That's the best evidence, I think. Now, you said your kneecap was gouged. The bone itself wasn't damaged, was it?

A. Dr. Ewert, he thought that the kneecap was cracked and that's why he took x-ray of it; but it wasn't, it just had a great big hole gouged—

Q. In the flesh.

A. No, in the soft bone of it.

Q. But the bone itself was not broken.

A. It wasn't cracked. It wasn't cracked, no.

* * * * * *

Q. When was the last time that you consulted a physician concerning your knee?

A. Well, Dr. Cameron looked at it once when I went up there with my husband, but otherwise I haven't had it looked at since I was discharged from the Minot hospital.

Q. Well, didn't you testify that you still suffer some pain in your knee?

A. Yes, I do.

Q. But it hasn't been such pain that you believe you should consult a physician about it.

A. Well, there was nothing can be done about it. I mean it just aches if I'm on my feet too much.

 Our view of this matter is that the amount of the judgment was not limited by any estimate of damages by Mrs.

Murray. The amount of damages was for the trial court to determine from the facts and not from the injured party's opinion. The findings of the trial court as to the quantum of damages are entitled to appreciable weight. Imus v. Huber, N.D., 71 N.W.2d 339; Gussner v. Mandan Creamery & Produce Co., 78 N.D. 594, 51 N.W. 2d 352.

■ Although no evidence was introduced showing the extent of permanent injuries suffered, the medical doctor who last attended Mrs. Murray's injuries reported that she was advised, on being discharged from the hospital, that she would probably recover good function of the knee, although not complete function. When this case was tried in March 1963, more than eighteen months after the injuries were inflicted, Mrs. Murray testified to the effect that her knee still ached when she stood on her feet longer than usual. There is nothing in the record to show what expense she had in securing household help while she was disabled; thus, we cannot include any amount for this expense in the award of damages, but the fact that help was necessary is further proof of her disability and attendant pain or discomfort and embarrassment.

Under all of the circumstances of this case, we find the trial court's award of damages not excessive but reasonable and proper.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

BURKE, C. J., and KNUDSON and TEIGEN, JJ., concur.

STRUTZ, Judge (concurring specially).

I concur in the result. While a judgment of $3,200 may seem excessive, in view of the fact that the plaintiff's special damages totaled only $373.61, the appellant has introduced absolutely no evidence which would justify this court's ordering a judgment for a different amount.

The plaintiff's evidence as to her injuries is weak. Her doctor, who had not examined her since she left the hospital ten days after the accident, testified that she would probably recover good function of her knee, "although not complete function." This statement stands uncontradicted in the record. That is some evidence of a permanent injury. The plaintiff herself testified that, at the time of trial, she still suffered pain in her knee. The defendant did not go to the trouble of having her examined by his own doctor, so we have no evidence in the record to show that the plaintiff, in fact, did not suffer a permanent injury to her knee.

The plaintiff clearly is entitled to judgment in some amount. Only the amount of that judgment is in question. Where the parties give to the court no more facts on which to base the amount of the judgment than we have in this record, this court on appeal is not going to say that the amount ordered by the trial court, based on evidence given by the witnesses who appeared and testified before the court, is excessive. The judgment, therefore, must be affirmed.