UNITED STATES STEEL CORP., Appellant v. S. D. HIGHWAY COMMISSION et al., Respondents, v. PETER KIEWIT SONS' CO., Respondents

(237 N.W.2d 175)

(File No. 11530. Opinion filed December 31, 1975)

Petition for rehearing denied February 5, 1976

H. L. Fuller, Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Kermit A. Sande, Atty. Gen., John B. Wehde, Sp. Asst. Atty. Gen., Pierre, for defendants and respondents.

Ellsworth E. Evans, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for third-party defendants and respondents.

Charles M. Thompson, May, Porter, Adam, Gerdes & Thompson, Pierre, Ronald E. Martel of Moore, Costello & Hart, Saint Paul, Minn., for amicus curiae, Associated Gen. Contractors of America and Associated Gen. Contractors of S. D.

MILLER, Circuit Judge.

This action was commenced in January 1969, specifically under Ch. 110, S.L.1964 (now SDCL 31-2-34 through 31-2-39), seeking recovery for additional work and materials arising out of the temporary suspension of work under a contract that had been entered into in February 1963, for the construction of the superstructure on the Platte-Winner Bridge. Plaintiff received

notice to proceed with construction on November 5, 1963, but on January 14, 1964, it was advised by the state highway engineer to suspend the work, apparently because of cracks in the pilings in the substructure of the bridge, which substructure was construct-ed by third-party defendants. The suspension continued until March 23, 1965, and plaintiff resumed work on the superstructure of the bridge on April 1, 1965.

In the initial trial to the court, judgment in the amount of $170,000 was awarded to the plaintiff. That judgment was entered on November 30, 1970. On December 28, 1970, such judgment was vacated on motion of third-party defendants because the trials between plaintiff and defendants and defendants and third-party defendants had been separated without notice to third-party defendants.

On November 21, 1972, this court entered its decision in *G. H. Lindekugel & Sons, Inc. v. South Dakota St. Hwy. C.*, 87 S.D. 32, 202 N.W.2d 125, construing SDCL 31-2-34 through 31-2-39. There this court held that SDCL 31-2-34 through 31-2-39 was a procedural remedy and not an appropriation statute that would allow payment of a judgment for breach of contract against the State of South Dakota. See South Dakota Constitution, Art. XI, § 9.

Presumably, because of the decision in *Lindekugel*, plaintiff amended its complaint to allege that the liability of the state for the additional work and materials caused by suspension of work on the bridge by the state highway engineer was specifically provided for in paragraph 4.5(c) of the construction contract and, as a result, a legislative appropriation for the contract would allow recovery.

Defendant, joined by third-party defendants, moved the trial court for summary judgment alleging that as a matter of law paragraph 4.5(c) of the contract did not allow for recovery against the state. The trial court by memorandum decision indicated that the motion for summary judgment would be granted. Following further hearings on a statute of limitations issue, summary judgment was filed and entered. It is that summary judgment from which plaintiff appeals.

In bringing this appeal, plaintiff has assigned as error the following:

1. That the trial court erred in granting summary judgment, arguing that there are genuine issues of material fact still to be determined.

2. That the trial court erred in determining that as a matter of law such contract provision (4.5(c) ) does not permit recovery and, further, in determining that defendants were entitled to judgment as a matter of law.

3. That the trial court erred in determining that SDCL 31-2-34 through 31-2-39, formerly Ch. 110, S.L.1964, did not constitute an appropriation statute for the payment of plaintiff's claim.

In *Wilson v. Great Northern Railway Company*, 1968, 83 S.D. 207, 157 N.W.2d 19, this court set down the guiding principles on the use of summary judgment. It is only appropriate that they be reiterated here.

"(1) The evidence must be viewed most favorable to the nonmoving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them. (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant. (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses."

Keeping these guiding principles in mind, we now address the first of plaintiff's assignments of error. This court finds that there are no genuine issues of material fact yet to be determined. It is not the specific claims for additional work and materials nor the fact that the work on the bridge was indeed suspended which defendants have disputed in this case. The only real issue which remains between the parties is the issue of defendant's liability for these claimed additional expenses. This was an issue of law to be determined by the trial court.

▪ Plaintiff's second assignment of error questions the trial court's finding that, as a matter of law, the contract provision, paragraph 4.5(c), [1] does not permit recovery.

---

1. The contract provision reads in its entirety as follows:
   "4.5—MAINTENANCE OF TRAFFIC
" (a) *Normal Traffic* — Traffic shall be maintained through a construction job unless otherwise provided. Where so provided in the plans, the Contractor may by-pass traffic over an approved detour route. The Contractor shall keep the portion of the road being used by public traffic in such condition that traffic will be adequately accommodated. He shall also provide and maintain in a safe condition temporary approaches, crossings, intersections with trails, roads, etc., provided, however, that snow removal will not be required of the Contractor for the accommodation of traffic. The Contractor shall bear all expense of maintaining traffic over the section of road undergoing improvement and of constructing and maintaining such approaches, crossings, intersections, and other features as may be necessary, without direct compensation, except as provided in (b) and (c) below. The Contractor shall suitably mark and maintain the project, and he shall be responsible under his bond for any accidents which may occur due to unsafe condition of the marked route through the work. The Contractor shall furnish, erect and maintain all necessary barricades, lights, torches, reflectors, and signs, provide sufficient watchmen to direct traffic, and take all necessary precautions for the protection of the work and safety of the public. All barricades, warning and directional signs shall conform with standard details shown either on the plans or in the manual 'Construction Signs' approved February 15, 1955, or as subsequently approved, furnished by the Department.
   "Unless specifically permitted by the plans or approved by the Engineer, the Contractor shall not close to traffic any bridge or culvert or any section of highway until an adequate detour has been provided.
   "When the proposal does not contain an item for 'Maintenance of Detours' or 'Removing Existing Structures and Maintaining Traffic', then no direct compensation will be made to the Contractor for the work and materials involved in constructing and maintaining temporary structures, stream crossings, detours, etc., as this work is to be considered subsidiary to the several items for which unit prices are requested in the proposal.
   "(b) *Special Detours* — When the proposal contains an item for 'Maintenance

In reviewing the record on this issue, this court agrees with the analysis and conclusions of the trial court in its memorandum decision, wherein it stated:

"THE ISSUE: Whether or not the contract imposes a legal obligation upon the State to pay for 'additional work' as claimed by Plaintiff.,

No claim is made by the Plaintiff under the 'extra work' provisions found in Section 9.4 of the Contract. Plaintiff contends that a suspension of work in fact occurred, and that payment for its claim is provided for in that sentence in 4.5(c) which reads:

---

of Detours' or 'Removing Existing Structures and Maintaining Traffic', then the payment for such items shall cover all cost of constructing and maintaining such detour or detours, including the construction of any and all temporary bridges and accessory features and the removal of same, and obliteration of the detour road. When the traffic flow is interrupted on such 'Special Detours' the project shall be suspended until such time as the traffic flow can be normally resumed, and reduction in payment of the the bid item shall be made for each day of interruption proportionate to the total number of actual working days that the detour is in use.

"(c) *Suspension of Work* — The Engineer may authorize a suspension of work when unfavorable weather or other conditions not the fault of the Contractor make such a suspension advisable. Prior to such a suspension the Contractor shall make passable and shall open to traffic such portions of the highway under improvement and such temporary roadways or portions thereof as may be agreed upon between the Contractor and the Engineer for the temporary accommodation of necessary traffic during the anticipated period of suspension. Thereafter and until an issuance of an' order for the resumption of construction operations, the maintenance of the temporary route or line of travel agreed upon shall be by and at the expense of the State. When work is resumed the Contractor shall replace or renew any work or materials lost or damaged because of such temporary use of the highway under improvement; shall remove any work or materials used in the temporary maintenance thereof, by the State; and shall complete the improvement in every respect as though its prosecution had been continuous and without interference. The necessary replacement of materials and all additional work caused by such suspension shall be paid for by the State at the contract unit prices or by force account where no contract item exists for such work and for materials. The Contractor shall be held responsible at no cost to the State, for maintenance and replacement or renewal of any work or material lost or damaged during temporary use of the unfinished highway during periods not covered by a written suspension order or periods of suspension, for failure to comply with the provisions of the contract."

'The necessary replacement of materials and all additional work caused by such Suspension shall be paid for by the State at the Contract unit prices or by force account where no contract item exists for such work and for materials.'

"Defendant contends Plaintiff is taking the foregoing provision out of context in order to reach the conclusion it does. Defendant contends Section 4.5, which is entitled 'Maintenance of Traffic', applies solely to the maintenance of traffic through the construction site or project, and that Plaintiff's various claims obviously have no connection with this type claim.

\*   \*   \*   \*   \*   \*

"A thorough and close reading of Section 4.5, and particularly 4.5(c), which is Plaintiff's sole basis for claiming money due under the contract, compels the conclusion that Plaintiff's claims do not fit into the type of claims contemplated therein. This Court is of the opinion that Plaintiff, indeed, is taking 4.5(c) out of context in order to bring its varied claims within the contract. There appears to be no relationship between the possible claims permitted under 4.5 with the numerous and extensive Claims set out in the Amended Complaint. The subject matter covered in Section 4.5 deals with traffic at the project site, the need to maintain traffic through the construction site, the need to provide temporary approaches, signs, barricades, lights, watchmen, detours, etc. It seems apparent to this court at least that Section 4.5(c) is intended to include only those claims that are proximately related to maintaining traffic during any suspension period, and that reference to 'replacement of materials and all additional work caused by such suspension' relates and is confined specifically to only those mentioned in Section 4.5. That this is the intent and effect of such provision is further buttressed by the language found in 4.5(a) where it is

stated that there shall be no direct compensation 'except as provided in (b) and (c) below'."

It should be further noted that sections 5.7[2] and 9.2[3] of the contract specifically prohibit recoveries of the type here sought.

■ As plaintiff's third assignment of error, it is argued that the trial court erred in determining that SDCL 31-2-34 through 31-2-39 does not constitute an appropriation statute for the payment of plaintiff's claim. This court does not deem itself in a posture to reach this issue since the plaintiff failed to properly preserve such issue at the trial level.

Admittedly, the original trial of this case included the issue of construction of the above-cited statutes. However, following vacation of the original judgment, plaintiff amended its complaint and pursued a theory of recovery based solely upon paragraph 4.5(c) of the contract in question. In fact, as stated in the memorandum opinion of the trial court, the plaintiff had conceded, in deference to the *Lindekugel* opinion, that SDCL 31-2-34 through 31-2-39 did not constitute an appropriation statute. Although the plaintiff has here assigned as error the construction of the statutes in question by the trial court, in actuality, it conceded the inapplicability of those statutes and

2. The third paragraph of section 5.7 states:
"Each Contractor involved shall assume all liability, financial or otherwise, in connection with his contract and *shall protect and save harmless the State from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other Contractors working within the limits of the same project* and shall assume all responsibility for all work not completed or accepted because of the presence and operations of the other Contractors." (emphasis supplied)

3. The second paragraph of section 9.2 states:
"The Contractor shall accept the compensation, as herein provided, in full payment for furnishing all materials, labor, tools, equipment, and incidentals necessary to the completed work and for performing all work contemplated and embraced under the contract; also for all loss or damages arising from the nature of the work, *or from any unforeseen difficulties which may be encountered during the prosecution of the work and until its final acceptance by the Engineer, and for all risks of every description connected with the prosecution of the work; also for all expenses incurred in consequence of the suspension of the work as herein authorized.*" (emphasis supplied)

amended its pleadings to conform to its new theory of recovery. Under these circumstances, it would be improper for the court to comply with the request of plaintiff and amicus curiae that we re-examine the *Lindekugel* decision.

Although not set forth in its assignments of error, we have considered the appellant's argument that a certain statute of limitations was improperly applied by the trial court, but we determine that it is unnecessary to rule upon the issue by reason of our disposition of this case.

The judgment of the trial court granting summary judgment in favor of defendants in this case is hereby affirmed.

All the Justices concur.

MILLER, Circuit Judge, sitting for WINANS, J., disqualified.