Luella Mae JOHNSON, Employee,
Claimant and Appellant,

v.

SKELLY OIL COMPANY, A Corpora-
tion, Employer, Self-insurer
and Respondent.

No. 12512.

Supreme Court of South Dakota.

Argued Sept. 17, 1979.

Decided Feb. 6, 1980.

Rehearing Denied March 13, 1980.

Ronald L. Schulz, of Loucks, Oviatt,
Green & Schulz, Watertown, for employee,
claimant and appellant.

Laird Rasmussen, of Dana, Golden, Moore
& Rasmussen, Sioux Falls, for employer,
self-insurer and respondent.

WOLLMAN, Chief Justice.

Employee, Luella Mae Johnson, appeals
from the circuit court's judgment reversing
an award of worker's compensation bene-
fits. We reverse and remand for reinstate-
ment of the award.

The Department of Labor (Department)
found that Mrs. Johnson was a secretary
for Skelly Oil Company in Watertown, that
her duties consisted of secretarial duties
and occasionally doing the office mailing at
the Watertown post office after work, and
that on Friday, October 6, 1972, it was her
responsibility to do the evening mailing for
the office. Because there were not enough
stamps at the office at that time, she took
the evening mail home with her, telling her
husband she planned to do the mailing Mon-
day morning when she could get more
stamps.

The Department found that on Monday,
October 9, 1972, Mrs. Johnson was on her
way to the post office to mail her employ-
er's letters at the time of her accident; that
the employer's letters were found in her
automobile after the accident; that her in-
juries arose out of and in the usual course
of her employment; that in attempting to
mail her employer's letters she was within
the course of employment and the injury
arose out of and in the course of her em-
ployment; and that she was entitled to
worker's compensation benefits from her
employer, including all medical benefits and
permanent disability compensation.

Respondent contends that the testimony of Mr. Johnson regarding his conversations with Mrs. Johnson on the morning of the accident contained inadmissible hearsay. We disagree.

Mr. Johnson was allowed to testify that before she left for work Mrs. Johnson told him: "I have to stop at the postoffice to mail these letters that I brought home on Friday." Mr. Johnson also testified: "She told me she had run out of stamps and it was Friday and she would be mailing them Monday morning when she could get some stamps."

[1] SDCL 19–16–7 (Rule 803(3), Federal Rules of Evidence) provides that a "statement of the declarant's then existing state of mind . . . such as intent, plan, motive, design . . . is not excluded" by the hearsay rule. Although our new rules of evidence were not yet in effect at the time this action was heard by the Department, we conclude that SDCL 19–16–7 encompasses the common law rule of *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), that out-of-court statements that tend to prove a plan or intention of the declarant are admissible to prove that the plan or intention was carried out. *Hillmon* held that decedent's last letters stating his intention to leave Wichita with Hillmon were admissible to prove that he had in fact left Wichita with Hillmon. See also *United States v. Annunziato,* 293 F.2d 373 (2d Cir. 1961), *cert. den.* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); *Nuttall v. Reading Company,* 235 F.2d 546 (3d Cir. 1956); *Smith v. Slifer,* 1 Cal.App.3d 748, 81 Cal.Rptr. 871 (1969); McCormick, Evidence § 295, at 697 (2d Ed. 1972). Requirements for the use of a declarant's statement of plan or intention are that the statment "must be of a present existing state of mind, and must appear to have been made in a natural manner and not under circumstances of suspicion." 6 Wigmore, Evidence § 1725, at 129 (Chad-

bourn Rev.1976), citing *United States v. Annunziato, supra.* See also *People v. Earnest,* 53 Cal.App.3d 734, 126 Cal.Rptr. 107 (1975) (statement of declarant's intention to burn house was properly received to prove that he did in fact do so); *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976).

Pursuant to this common law rule, the Maryland Court of Appeals held that an employee's statement to his wife prior to leaving for work that it was necessary for him to go to work that morning in order to deliver a gear wheel to his employer was admissible to prove that the employee was in the course of his employment when he was killed while walking from his automobile to his place of employment. *Maryland Paper Products Co. v. Judson,* 215 Md. 577, 139 A.2d 219 (1958).

The Supreme Court of Nebraska recently held that statements made before the declarant left on the journey during which he was killed were admissible under Nebraska's equivalent of Rule 803(3). Decedent's last phone calls to his wife and father and his discussion with an acquaintance tended to establish the business nature of the trip. These statements were admissible because they evidenced "an intent, design, or plan to do some specific act in the future." *Fite v. Ammco Tools, Inc.,* 199 Neb. 353, 258 N.W.2d 922, 925 (1977).

■ Accordingly, we hold that Mr. Johnson's testimony was properly admitted.[1]

In reversing the Department's decision, the circuit court cited *Marks' Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181 (1929), in which then Chief Judge Cardozo set out the following test to determine workmen's compensation coverage:

> To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in

---

1. We note also that in *Dail v. South Dakota Real Estate Com'n,* 257 N.W.2d 709 (S.D.1977), we held that SDCL 1–26–19 provides an exception to the hearsay rule if the evidence is "probative of a fact not reasonably susceptible of

proof under normal rules, and [if it is] of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." 257 N.W.2d at 712.

brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped . . . the travel is then personal, and personal the risk.

167 N.E. at 183.

Professor Larson summarizes the dual-purpose rule as follows:

[W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.

1 Larson, Workmen's Compensation, § 18.12 at 4–218 (1978).

Professor Larson cautions against misinterpreting the *Marks v. Gray* test:

It is inaccurate and misleading to call this test, as sometimes has been done, the "dominant purpose" test, or to paraphrase it by saying that the trip is a business trip if the "primary" purpose is business. Judge Cardozo used no such language. He said it was sufficient if the business motive was a concurrent cause of the trip. He then defined "concurrent cause" by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been canceled. . . .

Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant. If my employer tells me to drive to Chicago to buy a machine-bolt of a particular size, the main trip will remain a business trip even if, while in Chicago, I take the opportunity to visit relatives, buy a house, sell my car, report to the draft board, stock up on groceries for the coming week, and buy a complete spring wardrobe. The fact that the personal purpose outweighs the business in the sense that I *return with one ounce of goods for my employer and 200 pounds of goods for myself is completely immaterial, as long as it can be said that the business trip had to be taken and would have been taken in any case.*

Larson, supra, § 18.13 at 4–228–30 (citations omitted) (emphasis added). Further, Larson points out that

it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time.* It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose . . . . it was a concurrent cause of the trip . . . . .

Larson, supra, § 18.13 at 4–229 (citations omitted) (emphasis in original).

"When an employee, in the course of his normal journey off the premises to and from work, performs some concurrent service for his employer," the question becomes: Was the business mission of such character that it would have necessitated a trip by someone if this employee had not been able to handle it in combination with his journey? Larson, supra, § 18.21 at 4–238. If the answer is yes, the employee should be deemed to be within the course of his employment.

■ We conclude that the Department's findings, including the finding that Mrs. Johnson was on her way to the post office

to mail the letters at the time of the accident, are amply supported by substantial evidence on the whole record, which was the standard of review at the time of the proceedings below. SDCL 1–26–36(5).[2] Our review of the Department's findings stands on the same footing as that of the circuit court and is unaided by any presumption that the circuit court's decision is correct. *Piper v. Neighborhood Youth Corps*, 241 N.W.2d 868 (S.D.1976).

In a case similar to the case at bar, an Indiana appellate court held that it was in the course of decedent's duty to carry funds belonging to his employer for deposit in a bank near decedent's home, and that at the time of the accident, decedent was carrying cash and checks of his employer for deposit. The evidence that decedent was carrying his employer's funds at the time of the accident and that he was to deposit them before returning to work in the morning "was sufficient to warrant the [Industrial] Board in finding a causal connection between the accident and his employment," justifying compensation under the Workmen's Compensation Act. *Kariger Motors, Incorporated v. Kariger*, 132 Ind.App. 85, 173 N.E.2d 916, 920 (1961).

In accord with *Kariger* is *Travelers Insurance Company v. Moore*, 115 Ga.App. 295, 154 S.E.2d 385 (App.1967). An employee was killed on his way to the office in the morning. He had made collections the day before, taken them home with him that night, and was bringing them to the office the next morning when he was killed en route to work. Compensation was awarded on the ground that decedent was fulfilling a business duty at the time of the accident, even though he was also driving to work. See also *Skolnick v. Elgin Chair, Inc.*, 273 App.Div. 833, 75 N.Y.S.2d 840 (1948).

Applying the *Marks v. Gray* test as elaborated on by Professor Larson, we conclude that Mrs. Johnson's injuries are compensable. Had work been called off for some reason at the Skelgas store the morning of the accident, either Mrs. Johnson or another employee would still have had to make a trip to the post office to mail the business letters.

Our decision in this case is in accord with the long-standing rule that the worker's compensation law is to be liberally construed in favor of the employee, recently restated in and exemplified by our decision in *Bearshield v. City of Gregory*, 278 N.W.2d 166 (S.D.1979). Once the Department's findings are accepted as being supported by substantial evidence, the conclusion follows that Mrs. Johnson's injuries arose out of and in the course of her employment. Although the mailing of several letters may not constitute a major task, the inference is permissible, if not compelled, that Mrs. Johnson would have made the trip to the post office that ill-fated day had her secretarial duties at the office been cancelled. That being the case, the dual-purpose test is satisfied.

The judgment of the trial court is reversed, and the case is remanded to the trial court with directions to remand the matter to the Department of Labor for reinstatement of the award of compensation and for determination of the amount of compensation due the employee.

All the Justices concur.

---

2. As amended in 1978, 1978 S.D.Sess.L. ch. 17, SDCL 1–26–36(5) now incorporates the "clearly erroneous" standard of review.