SOUTH DAKOTA MEDICAL SERVICE, INC., a/k/a Blue Shield, Plaintiff and Appellee,

v.

MINNESOTA MUTUAL FIRE & CASUALTY CO., Defendant and Appellee,

and

Darnly Motter, as Guardian of Larry Motter, Incompetent, Defendant and Appellant,

and

Associated Hospitals Service, Inc., d/b/a Blue Cross of Western Iowa and South Dakota, Cross-Defendant and Appellee.

No. 13049.

Supreme Court of South Dakota.

Argued Oct. 22, 1980.

ON REASSIGNMENT

Decided March 18, 1981.

Rehearing Denied April 23, 1981.

John H. Zimmer of Zimmer, Richter & Duncan, Parker, for plaintiff and appellee.

Rodney Freeman, Jr. of Churchill, Manolis, Wheeler & Freeman, Huron, for defendant and appellee Minnesota Mut. Fire & Cas. Co.

Herbert A. Heidepriem of Heidepriem, Widmayer & Campbell, Miller, for defendant and appellant Darnly Motter.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for cross-defendant and appellee Associated Hospitals Service, Inc.

MORGAN, Justice (on reassignment).

Appellee Blue Shield originally brought a declaratory judgment action to determine its liability under a group coverage certificate, and appellee Minnesota Mutual Fire & Casualty Company's (Minnesota) liability for workmen's compensation benefits. Appellant Darnly Motter (Darnly), on behalf of Larry Motter (Motter), filed cross-complaints against appellees Blue Cross and Minnesota. The trial court entered summary judgment in favor of appellees Blue Cross and Blue Shield and dismissed Motter's cross-complaint action against Blue Cross on its merits. Motter appealed from this summary judgment, and on appeal he concedes he does not want to recover from Minnesota, and that that question is moot. We affirm.

The Miller School District 29-1 (district) of Miller, South Dakota, employed Motter as assistant instrumental music director. After school hours on February 10, 1977, Motter, accompanied by his wife Darnly and their two children, drove to his parents' home in Elkton, South Dakota, which is only eighteen miles from Brookings, South Dakota. Motter planned to attend the South Dakota Band and Music Instructors three-day music convention (the convention) in Brookings.

In 1977 and for many years prior thereto, the convention had been held during February in Brookings, and Motter had attended every year since the beginning of his employment with district, although district did not require his attendance at the convention. If a music instructor wanted to attend, however, district allowed him the required days off with pay, and even though district would pay travel expenses, Motter submitted no such travel voucher.

From 1969 through 1977 Motter and his family made numerous personal trips to Elkton for family reunions, birthdays, and so forth. While these annual family gatherings generally coincided with the dates of the convention, Motter had also attended the family gatherings for several years prior to his employment as a music instructor.

On February 11 Motter and Darnly drove from Elkton to Brookings. Darnly dropped Motter off at the ongoing convention, then proceeded on to Sioux Falls to visit friends. When she returned from Sioux Falls later that day, she left their car in Brookings for Motter and returned to Elkton with her mother-in-law. Motter drove back to his parents' home in Elkton that night after attending the convention, and he attended no other portion of the convention. On February 12 and 13 Motter took care of personal matters, none of which related to his employment as a music instructor.

On February 13 the Motter family started home to Miller, driving on U.S. Highway 14. At a point two miles west of Iroquois, South Dakota, the Motters' vehicle crashed head-on with another vehicle. Motter received severe head injuries, and as a result, he is now completely and totally disabled.

Motter has at no time made application for benefits from Minnesota, the worker's compensation carrier for district. Minnesota nevertheless denied coverage in writing on June 16, 1977, on the grounds that his "injuries did not occur in the course of employment."

Motter proceeded against the third-party joint tort-feasor and her liability insurance carrier, eventually being paid the policy

limit of $100,000. Motter also made requests of Blue Cross and Blue Shield for payment of his medical expenses of approximately $36,000. These insurers denied liability claiming that Motter's injuries were covered by workmen's compensation, and therefore were not covered under a clause excluding items covered by workmen's compensation.

The trial court granted Blue Cross' and Blue Shield's motions for summary judgment. Prior to granting the motions, the trial court issued a memorandum opinion which, in pertinent part, stated:

> In conclusion, the Court feels that the determination of a meritorious claim or eligibility under workmen's compensation is for the Department of Labor. Further, that this determination could only have been initiated by Motter within the time allowed by law. Motter failed to do this within the two year statute of limitations, and did so knowingly and voluntarily.

The first issue to be decided on this appeal is whether the trial court is precluded from determining Motter's workmen's compensation status in a separate action to collect under a private health insurance policy containing an exclusion for items covered by workmen's compensation.

■ Generally, issues concerning employee injuries and whether they grew out of and in the course of the employment relationship are held to be within the purview and exclusive jurisdiction of the administrative agency charged with hearing such claims. See *Steffens v. Proehl*, 171 N.W.2d 297 (Iowa 1969); *Jansen v. Harmon*, 164 N.W.2d 323 (Iowa 1969); *Herman v. Theis*, 10 Mich.App. 684, 160 N.W.2d 365 (1968). But these authorities deal with claims by an employee against the employer.

In the present cross-complaint action, the employee brought an action against a third party who is neither the employer nor the perpetrator of the injury. In *Bjerke v. Heartso*, 183 N.W.2d 496 (N.D.1971), the Supreme Court of North Dakota dealt with a similar situation. In *Bjerke* the decedent was killed in an automobile accident. Dece-

dent's spouse brought a wrongful death action against the estates of both drivers and against decedent's employer. As here, the issue of whether decedent was acting within the scope of his employment was raised. The defendants claimed that the question of workmen's compensation coverage was within the exclusive jurisdiction of the Workmen's Compensation Bureau, and because the statute of limitations had run, such a claim was forever barred. The trial court made a finding that *Bjerke* was acting outside the scope of his employment, so it held that the questions of workmen's compensation were eliminated from the case. The North Dakota Supreme Court, refusing to relinquish jurisdiction of Bjerke's claim, stated:

> A wrongful-death action certainly is cognizable, in the first instance, in the district court . . . . Merely because the case incidentally has a Workmen's Compensation question in it does not oust the courts of jurisdiction.

Id. at 500.

We agree with *Bjerke* and hold that the trial court had jurisdiction to try the issue of scope of employment in this action for recovery on the insurance policies.

Both of the group insurers, Blue Cross and Blue Shield, had sought summary judgment on the grounds that the undisputed facts established the eligibility of Motter for workmen's compensation coverage. Motter had sought summary judgment on alternative grounds: first, that he had opted to go against the third-party tort-feasor rather than the workmen's compensation carrier, the workmen's compensation carrier had denied coverage anyway, and therefore the exclusions did not apply; or in the alternative, that he, the employee, was not within the course of employment and therefore not within the scope of the exclusions. These three parties having moved for summary judgment, they have agreed that the facts are not in dispute. This court can read the affidavits and depositions as well as the trial court can.

The next issue, then, is whether under the undisputed facts Motter was within the scope of his employment. We are not persuaded by Darnly Motter's rather self-serving deposition statement that the Motters would have gone to Elkton regardless of the convention, nor are we persuaded by the workmen's compensation carrier's finding that Motter was outside the scope of his employment.

This court has applied a refinement of the "dominant purpose" test in the recent decision of *Johnson v. Skelly Oil Co.,* 288 N.W.2d 493, 495 (S.D.1980), quoting 1 Larson, Workmen's Compensation, § 18.13 at 4–228–30 (citations omitted):

> "It is inaccurate and misleading to call this test, as sometimes has been done, the 'dominant purpose' test, or to paraphrase it by saying that the trip is a business trip if the 'primary' purpose is business. Judge Cardozo used no such language. He said it was sufficient if the business motive was a concurrent cause of the trip. He then defined 'concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been canceled . . . .
>
> Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant.

We have a long-standing policy to interpret workmen's compensation statutes liberally. *Donovan v. Powers,* 86 S.D. 245, 193 N.W.2d 796 (1972). We do not believe that our interpretation in this instance should be any different because the worker is attempting to avoid coverage. The policy is based on the best interest of workers in general and cannot be subverted for one worker in particular.

The facts adduced in the depositions indicate that all four music instructors at Miller Junior and Senior High School were excused to attend the convention and did so. They all received pay for their excused absences. The other three, who apparently carpooled, also submitted vouchers and were paid for expenses under district policy.

The fact that Motter did not incur housing expenses nor submit a voucher for food and travel does not alter the fact of some business motive. " 'The fact that the personal purpose outweighs the business . . . is completely immaterial, *as long as it can be said that the business trip had to be taken and would have been taken in any case.' "* *Johnson,* supra, again quoting 1 *Larson,* supra, § 18.13 at 4–228–30 (emphasis in original). We do not think there is any question that if this case had come to us in the posture that Motter was seeking workmen's compensation, we would have held that he was within the scope of his employment. The fact that he waived compensation coverage and went after the third-party tortfeasor with a recovery of $100,000 should not affect the liability as between Motter and the group insurers.

We examine Motter's first contention that by failing to file under the Workmen's Compensation Act, the exclusions under the health policies are negated. In support of this contention he cites *Antram v. Stuyvesant Life Insurance Company,* 291 Ala. 716, 287 So.2d 837 (1973). Our research discloses that there are divergent lines of authority on this issue, all of which center on the wording of the exclusion. The *Antram* exclusion was in a sickness and accident policy that provided for maximum monthly benefits " '*less any amount of disability income benefits paid or payable* under primary Social Security, Workmen's Compensation, Unemployment Compensation or disability benefits law . . . .' " Id. at 718, 287 So.2d at 838 (emphasis in original).

Under the policy in *Antram,* the maximum benefit allowable based on salary or the policy limit, whichever was the lesser, was first computed and then the amount payable under social security and under workmen's compensation was computed and deducted to arrive at a net monthly continuation payment. The issue as defined by the Alabama Supreme Court was "whether the words 'or payable' should be interpreted as authorizing the insurer to deduct the workmen's compensation benefits from the

salary continuation payment where the insured did not receive such benefits due to a settlement with the third-party tort feasor." Id. at 719, 287 So.2d at 839. The decision, however, went on to distinguish *Antram* from a case such as we are now considering when it cited its own previous decision of *Phillips v. Prudential Insurance Co. of America*, 285 Ala. 472, 233 So.2d 480 (1970). In *Phillips* it held that the exclusionary clause in a family hospital policy, which stated that the policy did not provide benefits for an injury covered by any workmen's compensation act, related to the type of injury placing the claimant under workmen's compensation law, rather than to the benefit flowing from such a law. In *Phillips* the exclusionary provision was: "This policy does not provide benefits with respect to: '1. Sickness or injury covered by any workmen's compensation act . . . .'" Id. at 473, 233 So.2d at 481.

In the instant case we find that the exclusions in both policies are clear and unambiguous in their references to a type of injury rather than to the benefits flowing from such injury. As the California Court of Appeal, Second District, stated in *Bailey v. Interinsurance Exch. of Auto. Club of So. Cal.*, 49 Cal.App.3d 399, 403, 122 Cal.Rptr. 508, 510 (1975) (citations omitted):

> Workmen's compensation coverage is an integral part of our insurance system in providing medical coverage for persons injured in the course of their employment, and a person who has been injured in the course of his employment through the acts of a third party tortfeasor generally looks to the workmen's compensation carrier as the primary provider of medical benefits. Hence, it has become commonplace in various forms of medical and disability insurance policies to include an exclusion from the policy for benefits obtainable under workmen's compensation law. These exclusions are clearly consistent with public policy.

The South Dakota Legislature has recognized and approved this public policy by adopting SDCL 58–17–10, wherein it has stated: "A policy of health insurance shall contain no provision for reduction in the payment of benefits under the policy because of the existence of any other insurance with the same insurer or other insurers except for benefits payable under worker's compensation insurance."

We hold that the insurance carriers were entitled to summary judgment for all the reasons that we have stated, and affirm the decision of the trial court as the right result even though based on erroneous conclusions or wrong reasons. *Owens v. City of Beresford*, 87 S.D. 8, 201 N.W.2d 890 (1972).

WOLLMAN, C. J., concurs specially.

HENDERSON, J., concurs.

DUNN and FOSHEIM, JJ., concur in part and dissent in part.

WOLLMAN, Chief justice (concurring specially).

I agree that the trial court had jurisdiction to determine the issue of scope of employment in the present action.

I also agree that the exclusionary clauses in the policies preclude recovery by Motter, although I do not agree with the holding in *Phillips v. Prudential Insurance Co. of America*, 285 Ala. 472, 233 So.2d 480 (1970), that it is the type of injury rather than the benefits flowing from such injury that determines whether the exclusionary clauses are effective.

DUNN, Justice (concurring in part, dissenting in part).

I would concur in the majority opinion to the extent that the trial court had jurisdiction to try the issue of whether Motter was acting within the scope of his employment in this action to recover under the two insurance policies. I would, however, reverse on the granting of a summary judgment to Blue Cross and Blue Shield.

In the first place, the trial court did not try or even consider the issue of whether Motter was acting within the scope of his employment when the motion for summary judgment was granted. In granting this motion, the Honorable Judge Martin issued

a memorandum opinion, which states in pertinent part:

> In conclusion, the Court feels that the determination of a meritorious claim or eligibility under workmen's compensation is for the Department of Labor. Further, that this determination could only have been initiated by Motter within the time allowed by law. Motter failed to do this within the two year statute of limitations, and did so knowingly and voluntarily.

The trial court, therefore, only reached the erroneous conclusion that it did not have jurisdiction to decide this issue. We have held that we will not pass on matters which have not been considered by and ruled upon in the trial court; however, the majority opinion does exactly that. See *Bottum v. Herr*, 83 S.D. 542, 162 N.W.2d 880 (1968); *Breckweg v. Knochenmus*, 81 S.D. 244, 133 N.W.2d 860 (1965).

I also disagree with the majority opinion's inexplainable finding that the granting of a summary judgment was proper. Darnly Motter's depositional statement that the Motters would have gone to Elkton on this weekend regardless of the convention raises a genuine question of fact, irrespective of whether we or a jury might find it persuasive or impersuasive. Her depositional statement is substantiated in the record by a series of planned personal and family activities, which the Motters engaged in over a period of four days, with Motter only attending the ongoing convention for a brief time on one afternoon. Her statement is further supported by the fact that Motter did not submit a claim for the expenses of this trip, even though three other music teachers from this school district did submit such a claim and were paid by the district for the full amount of their expenses.

Aside from Darnly Motter's deposition the *only* other items of evidence whatsoever are a deposition of the school superintendent and the affidavits of the parties, all of which are inconclusive and conflicting on the issue of scope of employment. The rule in such a case is that, "[a] conflict in affidavits respecting issues of fact preclude summary judgment." *Hansen v. Howard O. Miller, Inc.*, 93 Idaho 314, 460 P.2d 739, 742 (1969). In any event, the state of the evidence is such that it removes this case from the limited category of cases in which this court has upheld the granting of a summary judgment. See *Delzer Const. Co. v. South Dakota St. Bd.*, 275 N.W.2d 352 (S.D. 1979); *Wm. Collins, Inc. v. S.D. State Bd. of Transp.*, 264 N.W.2d 491 (S.D.1978); *U.S. Steel Corp. v. S.D. Highway Commission*, 89 S.D. 679, 237 N.W.2d 175 (1975); *Brasel v. Myers*, 89 S.D. 114, 229 N.W.2d 569 (1975).

Finally, I am convinced that Blue Cross and Blue Shield are not entitled to the liberal rules of construction of workmen's compensation laws as announced in prior decisions of this court. I am cognizant of the rule that: "Workmen's Compensation Law is remedial and should be liberally construed to effectuate its purpose." *Donovan v. Powers*, 86 S.D. 245, 248, 193 N.W.2d 796, 798 (1972). In accepting this rule, however, we must divine the purpose of these laws. We have stated that:

> The general purpose of the Workmen's Compensation Law is to substitute, in place of the doubtful contest for recovery or proof of an employer's negligence and the absence of common-law defenses, a right of relief based on the fact of employment (stated to be practically automatic and certain), which *improves* the economic status of the worker and obviates the uncertainties, delay, expense and hardship attendant upon the enforcement of common-law remedies.

*Id.* at 798 (emphasis supplied). To follow the spirit of *Donovan*, we must take that stance which *improves* the economic status of the worker; only then would we be liberally construing these laws to effectuate their purpose. This would seem to be especially true where the workmen's compensation claim is asserted by a third party as a defense to a private contractual claim in a case which does not even involve the employer and employee as adversary parties. In so holding, we would not be disturbing the policy of liberal construction since this

**364**

is not a workmen's compensation case. Rather, it is a contract action against two insurers who are seeking to avoid liability by hoisting the workmen's compensation laws as a shield against their insured. These companies ask not only to hide behind such laws, they ask that we give them the benefit of liberal rules of construction which were intended to benefit employees. I am convinced they are not entitled to these liberal rules of construction.

The applicable standard which we should apply is: "Under South Dakota law, it is a well settled principle that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer." *Masten v. Life Investors Ins. Co. of America*, 474 F.Supp. 373, 376 (D.C.S.D. 1979). See *Dairyland Insurance Company v. Kluckman*, 86 S.D. 694, 201 N.W.2d 209 (1972); *Presentation Sisters, Inc. v. Mutual Ben. Life Ins. Co.*, 85 S.D. 678, 189 N.W.2d 452 (1971).

The majority opinion has chosen to rule on this close and difficult issue of scope of employment without a full development of the evidentiary facts and without findings by the trial court on the ultimate facts. They have also chosen to liberally construe the workmen's compensation laws to benefit the economic status of the two insurance companies. The record is simply insufficient for me to concur in such a result which will ultimately deny Motter the opportunity to present his claim to the court.

I would, therefore, reverse the judgment of the trial court and remand the case for further proceedings.

I am authorized to state that FOSHEIM, J., joins in this concurrence in part and dissent in part.